UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANTZ SAMSON, <br><br> Plaintiff, <br><br> v. <br><br> UNITED HEALTHCARE SERVICES, INC., <br><br> Defendant. | CASE NO. C19-0175JLR <br><br> ORDER DENYING DEFENDANT'S MOTION TO STAY |

## I. INTRODUCTION

Before the court is Defendant United Healthcare Services, Inc.'s ("United") motion to stay. (Mot. (Dkt. # 35).) Plaintiff Frantz Samson opposes United's motion. (Resp. (Dkt. # 37).) The court has considered the motion, the parties' submissions

//
//
//

concerning the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES United's motion to stay.

## II. BACKGROUND

This case arises under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("the TCPA" or "the Act"). (Compl. (Dkt. # 1-2) ¶¶ 10.1-11.4.) Mr. Samson alleges that United violated the TCPA when it called him from an "automatic telephone dialing system" ("ATDS") without his prior express consent. (*Id.* ¶¶ 1.2, 6.8, 6.16-6.18.) On May 14, 2018, the Federal Communications Commission ("FCC") sought public comment on the meaning of the terms "ATDS" and "called party" under the TCPA. (Armstrong Decl. (Dkt. # 36) ¶ 2, Ex. 4 ("5/14/18 Notice") at 1.) United argues that the FCC's interpretation of these terms is "potentially outcome-determinative" of Mr. Samson's claims and moves to stay these proceedings pending the FCC's determination. (Mot. at 1-2.)

**A. Statutory and Regulatory Background**

The TCPA prohibits making any call "using any automatic telephone dialing system [ATDS] or an artificial or prerecorded voice" to a telephone number assigned to a cellular service. 47 U.S.C. § 227(b)(1)(A). It defines ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. *Id.* The TCPA does not

//

---

[1] United requests oral argument (*see* Mot. at 1), but the court concludes that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

impose liability where the "called party" provides "prior express consent." *Id.* § 227(b)(1)(a).

Since the TCPA's enactment, the FCC has issued a series of rulings addressing the Act's reach. In a 2015 Declaratory Ruling and Order ("2015 Order"), the FCC addressed the meaning of both "ATDS" and "called party" under the TCPA. (Armstrong Decl. ¶ 2, Ex. 3 ("2015 Order").) The FCC defined ATDS as a device with the capacity to dial random or sequential numbers, even if it lacks the "'present ability' to do so." (*Id.* ¶ 15.) The FCC also clarified the meaning of "called party" in the context of reassigned numbers. (*See id.* ¶¶ 71, 74.) The 2015 Order defined "called party" in this context as the post-reassignment "subscriber" or "customary user," rather than the intended recipient of the call. (*Id.* ¶¶ 73-74.) The FCC recognized that, under this definition, a caller might be liable to the new subscriber although the caller reasonably did not know that the number had been reassigned. (*See id.* ¶¶ 87-88.) Thus, the FCC designated a one-call safe harbor whereby a caller would not be liable for the caller's first call to a reassigned number. (*See id.* ¶ 90.)

In *ACA International v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), the D.C. Circuit set aside the FCC's definition of ATDS and treatment of reassigned numbers. *Id.* at 700, 708. The court concluded that the FCC's definition of ATDS was "unreasonably and impermissibly expansive," *id.* at 700, because "it would appear to subject ordinary calls from any conventional smartphone to the Act's coverage," *id.* at 692. Furthermore, the court concluded that the FCC's one-call safe harbor was arbitrary and capricious. *Id.* The court set aside the FCC's treatment of reassigned numbers generally because it could

not determine with substantial certainty that the FCC would have adopted that definition without the one-call safe harbor. *Id.* at 708-09. Nonetheless, the court emphasized that the FCC could permissibly interpret "called party" to refer to the "current subscriber" in the reassigned number context. *Id.* at 706. Shortly thereafter, the FCC sought public comment on the meaning of the terms "ATDS" and "called party" in light of the D.C. Circuit's ruling in *ACA International*. (5/14/18 Notice at 1, 3.)

In the meantime, the Ninth Circuit addressed the meaning of ATDS in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1049 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289 (2019). The Ninth Circuit concluded that, after *ACA International*, "only the statutory definition of ATDS as set forth by Congress in 1991 remains." *Id.* Interpreting the statute "anew," the Ninth Circuit held that the statutory text is ambiguous on its face. *Id.* at 1050-51. After examining the context and structure of the statutory scheme, the Court concluded "that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to store numbers and to dial stored numbers automatically." *Id.* at 1052. The FCC subsequently issued a call for public comment on the Ninth Circuit's interpretation of ATDS, "as well as how that decision might bear on the analysis set forth in *ACA International*." (Armstrong Decl. ¶ 2, Ex. 5 ("10/3/18 Notice") at 1-2.)

//

//

//

B.   **Factual and Procedural Background**

Mr. Samson acquired a new cell phone number in March 2018, at which point he received his first call from United. (Compl. ¶¶ 6.1, 6.3.) United argues that it likely received prior express consent to call that number before it was reassigned to Mr. Samson. (Mot. at 2 (citing Answer (Dkt. # 34) ¶ 26).) During the following months, Mr. Samson allegedly received "numerous automated calls" from United, even after he informed a United agent that he was not the person United intended to call. (*Id.* ¶¶ 6.3-6.6.) Mr. Samson alleges that United used both an artificial or prerecorded voice and an ATDS. (*Id.* ¶ 6.16-6.17.) He further alleges that he did not consent to receiving United's calls. (*Id.* ¶ 1.2.)

Mr. Samson brought this lawsuit against United in King County Superior Court under the Washington Automatic Dialing and Announcing Device Statute, RCW 80.36.400, and the TCPA. (Compl. ¶¶ 8.1-11.4.) He seeks to represent a class of others similarly situated. (*Id.* ¶ 1.3.) United removed the matter to federal court. (*See* Not. of Rem. (Dkt. # 1) at 1.) United now moves under the primary jurisdiction doctrine to stay these proceedings until the FCC defines the terms "called party" and "ATDS." (*See generally* Mot.)

### III.   DISCUSSION

A.   **Legal Standard**

Primary jurisdiction is a prudential doctrine that courts apply when "an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather

than by the judicial branch." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir. 2008)). Not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction. *Astiana*, 783 F.3d at 760. Rather, the doctrine is reserved for a "'limited set of circumstances' that 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *Id.* (quoting *Clark,* 523 F.3d at 1114).

"No fixed formula exists for applying the doctrine of primary jurisdiction." *United States v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956). Courts in the Ninth Circuit consider four factors: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006) (quoting *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)). Ultimately, however, judicial efficiency is the "deciding factor" in whether to invoke primary jurisdiction. *Astiana*, 783 F.3d at 760. A court need not invoke primary jurisdiction when "a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Id.* (citing *Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Jewel Tea Co.,* 381 U.S. 676, 686 (1965)).

//

//

## B. Four-Factor Test

Mr. Samson does not dispute that the second, third, and fourth factors of the primary jurisdiction inquiry are satisfied. (*See* Resp. at 6); *see also Davel*, 460 F.3d at 1086. As to the second factor, "Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA." *Satterfield v. Simon & Shuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009); *see also* 47 U.S.C. § 227(b)(2). Similarly, the FCC's regulatory authority over the TCPA subjects industries to a "comprehensive regulatory scheme that requires expertise or uniformity in administration," such that the third and fourth factors are satisfied. *See, e.g.*, *Knapper v. Cox Commc'ns, Inc.*, No. CV-17-00913-PHX-SPL, 2019 WL 250430, at *2 (D. Ariz. Jan. 17, 2019); *Pieterson v. Wells Fargo Bank, N.A.*, No. 17-CV-02306-EDL, 2018 WL 3241069, at *3 (N.D. Cal. July 2, 2018). The four-factor primary jurisdiction analysis thus hinges on the first factor: whether there is a "need" for the FCC to "resolve" the meaning of ATDS and "called party." *See Davel*, 460 F.3d at 1086; *see also Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1173 (9th Cir. 2002) (holding that a stay would be appropriate if the claim "involves issues requiring resolution by the FCC").

### 1. ATDS

United argues that staying these proceedings pending the FCC's final interpretation of ATDS will promote uniformity in the administration of the TCPA. (*See* Mot. at 9, 11.) Although United acknowledges that the Ninth Circuit construed the statutory definition of ATDS in *Marks*, it contends that the court should not rely on *Marks* as "settling the issue." (Reply at 3.) First, United emphasizes that the Third

Circuit's holding in *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018), directly conflicts with the definition of ATDS the Ninth Circuit adopted in *Marks*. (*See* Reply at 3.) Second, United notes that the FCC "specifically and immediately solicited public comment as to whether the *Marks* decision had been correctly decided." (*Id.*; *see also* 10/3/18 Notice at 1-2.) As United Health points out, if the FCC clarifies the meaning of ATDS, the Ninth Circuit must defer to that interpretation.[2] (Reply at 3.)

The court finds United's arguments unpersuasive. To begin, neither the existence of conflicting authority nor the FCC's pending proceedings bears directly on the primary jurisdiction analysis. Rather, the court must ask whether the meaning of ATDS is an issue of first impression or one that courts are not competent to decide. *See Astiana*, 783 F.3d at 760. The court concludes that, after *Marks*, "the question of what constitutes an ATDS is no longer one of first impression and does not involve technical or policy considerations particularly within the FCC's expertise or discretion." *Pine v. A Place for Mom, Inc.*, No. C17-1826TSZ, 2019 WL 1531689, at *2 (W.D. Wash. Apr. 9, 2019). Indeed, several other district courts in this circuit have recently considered motions like United's and declined to impose a stay pending the FCC's anticipated definition of ATDS. *See Pine*, 2019 WL 1531689, at *2; *see also Singer v. Las Vegas Athletic Clubs*, No. 2:17-cv-01115-GMN-VCF, 2019 WL 1338384, at *4 (D. Nev. Mar. 25, 2019) ("Given the *Marks* Court's construction of the TCPA, the statutory definition of an ATDS is neither an issue of first impression, nor one that judges are incompetent to

---

[2] *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984).

decide."); *Knapper*, 2019 WL 250430, at *2 ("*Marks* represents binding law in this Circuit. Consequently, there is no matter of first impression or of such complexity inhibiting this Court from proceeding."); *Nicholson v. REI Energy, LLC*, No. 3:18-CV-00203-HZ, 2019 WL 993624, at *5 (D. Or. Feb. 28, 2019) ("In *Marks*, the Ninth Circuit provided binding precedent on the issue presented by this case."); *Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DADSKO, 2018 WL 6459964, at *3-4 (E.D. Cal. Dec. 10, 2018); *Pieterson*, 2018 WL 3241069, at *3. The court declines to depart from the weight of existing authority on this question.[3]

2. Called Party

The definition of "called party" is not an issue of first impression among the federal courts; nor is it "a particularly complicated issue." *See Astiana*, 783 F.3d at 760. Although the Ninth Circuit has not directly spoken on the "called party" issue, two other circuits have held that "called party" refers to the person subscribing to the called number at the time the call was made. *See Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 641 (7th Cir. 2012); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250-52 (11th Cir. 2014). Moreover, district courts in the Ninth Circuit have concluded that courts are competent to engage in statutory construction to determine the meaning of "called party." *See, e.g.*, *Knapper*, 2019 WL 250430, at *3 (emphasizing that, "[s]imply because

//

---

[3] United cites several cases in which district courts in this circuit granted a stay awaiting anticipated clarification from the FCC on the meaning of ATDS. (*See* Mot. at 11.) The court finds these cases unpersuasive because they pre-date the Ninth Circuit's decision in *Marks*. *See, e.g.*, *Wright v. Lyft, Inc.*, No. C14-421 MJP, 2015 WL 12977403, at *2-3 (W.D. Wash. Jan. 6, 2015); *Mendoza v. UnitedHealth Grp. Inc.*, No. 13-1553 PJH, 2014 WL 722031, at *2 (N.D. Cal. Jan. 6, 2014).

Congress has delegated implementing authority over the TCPA to the FCC, including the authority to determine the meaning of 'called party,' such authority does not preclude a court from engaging in statutory construction"); *Pieterson*, 2018 WL 3241069, at *3 (noting that, although no controlling authority on the meaning of "called party" exists in the Ninth Circuit, numerous "persuasive authorities would help inform the [c]ourt's interpretation of how the TCPA treats liability for reassigned numbers").

United argues that a stay is appropriate because, in *ACA International*, "[t]he D.C. Circuit expressly vacated the prior definition of 'called party' that [Mr. Samson] seeks to rely on here." (Reply at 3.) The D.C. Circuit indeed struck down the FCC's treatment of reassigned calls generally, including its interpretation of "called party." *ACA Int'l*, 885 F.3d at 708-09. But the court also emphasized that the FCC could permissibly interpret "called party" to refer to the "current subscriber" in the reassigned number context. *Id.* at 706 (finding the Seventh Circuit's analysis in *Soppet* "persuasive insofar as it supports concluding that the Commission was not *compelled* to interpret 'called party' . . . to mean the 'intended recipient' rather than the current subscriber"). Accordingly, *ACA International* does not preclude the court from considering persuasive authority that construes "called party" as the current subscriber. *See Pieterson*, 2018 WL 3241069, at *3. Likewise, the D.C. Circuit's decision impliedly confirms that the interpretation of "called party" does not fall within the particular expertise of the FCC. *See id.*

Finally, as with the question of what constitutes an ATDS, other district courts have rejected other litigants' arguments that the primary jurisdiction doctrine weighs in favor of a stay in cases that require courts to consider the meaning of "called party." *See*

*Knapper*, 2019 WL 250430, at *3 (declining to stay proceedings to await the FCC's final rule interpreting "called party"); *Pieterson*, 2018 WL 3241069, at *3 (denying a stay and pointing out that courts in the Ninth Circuit have addressed the "called party" issue even though no binding precedent exists).[4] Although this approach may present "some risk of inconsistent rulings[,] . . . such is the case in every developing area of law." *Knapper*, 2019 WL 250430, at *3 (quoting *Larson*, 2018 WL 6459964, at *4). The court sees no reason to depart from these authorities and declines to invoke the primary jurisdiction doctrine with respect to the construction of "called party" in this case.

## C. Judicial Efficiency

Considerations of judicial efficiency also disfavor applying the primary jurisdiction doctrine to stay Mr. Samson's claims. Relying on *Astiana*, United argues that judicial efficiency is relevant "where it is unclear whether necessary agency expertise is likely to occur" and stresses that "the FCC is directly considering key terms at issue for Plaintiff's claims." (Reply at 5 (citing *Astiana*, 783 F.3d at 761).) Yet, the *Astiana* court expressly identified another, distinct situation in which courts should refrain from invoking primary jurisdiction: "when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Astiana*, 783 F.3d at 761. That is likely the case here.

//

//

---

[4] United relies on *Matlock*, 2014 WL 1155541, at *2, in which the court granted a stay on the issue of reassigned numbers. (Mot. at 11.) However, this case does not accord with more recent decisions following the D.C. Circuit's ruling in *ACA International*.

Here, the FCC may not issue its final decision for years. *See Larson*, 2018 WL 6459964, at *4 (quoting *Pieterson*, 2018 WL 3241069, at *5 ("The timing of a new order from the FCC is also uncertain. . . . This process can take years.")). In addition, "the FCC's order will be subject to further challenge, which is exactly what happened with the 2015 Declaratory Ruling." *Pieterson*, 2018 WL 3241069, at *5; *see also Knapper*, 2019 WL 250430, at *3; *Larson*, 2018 WL 6459964, at *4-5 (E.D. Cal. Dec. 10, 2018); *see also Fontes v. Time Warner Cable Inc.,* No. CV14-2060-CAS(CWX), 2015 WL 9272790, at *2 (C.D. Cal. Dec. 17, 2015) (explaining that the court granted a stay awaiting the FCC's 2015 Order and then proceeding to grant another stay awaiting the outcome of the challenge to the 2015 Order in *ACA International*). The court acknowledges that "judicial economy weighs against issuing a decision that may be undermined by an anticipated ruling of the regulatory body." *See Matlock v. United Healthcare Servs., Inc.*, No. 2:13-CV-02206-MCE-EF, 2014 WL 1155541, at *2 (E.D. Cal. Mar. 20, 2014). Nonetheless, the court declines to run the risk of significantly postponing its consideration of claims it is competent to adjudicate. *See supra* § III.B; *Astiana*, 783 F.3d at 761.

//

//

//

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the court DENIES United's motion to stay. (Dkt. # 35.)

Dated this 20th day of May, 2019.

*[signature]*

The Honorable James L. Robart
U.S. District Court Judge