THE HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7            IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF WASHINGTON
8                       AT SEATTLE

9

10   FRANTZ SAMSON, a Washington resident,        NO. 2:19-cv-00175-JLR
     individually and on behalf of all others
11   similarly situated,                          **UNITED HEALTHCARE SERVICES
                                                  INC.'S MOTION TO STAY PENDING
12                      Plaintiff,                THE U.S. SUPREME COURT'S
                                                  DECISION IN** *BARR V. AMERICAN*
13          v.                                    *ASSOCIATION OF POLITICAL*
                                                  *CONSULTANTS***, OR, ALTERNATIVELY,
14   UNITED HEALTHCARE SERVICES, INC.,            TO DISMISS, TRANSFER, OR STAY
                                                  UNDER THE FIRST-TO-FILE RULE**
15                      Defendant.
                                                  **NOTE ON MOTION CALENDAR:
16                                                MAY 1, 2020**

17

18

19

20

21

22

23

24

25

26

27

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(t) 415 293-6800 | (f) 415 293-6899
www.bsfllp.com

1

**TABLE OF CONTENTS**

FACTUAL BACKGROUND ..................................................................................................3

    I.    The Supreme Court may invalidate the TCPA provision underlying Plaintiff's
only claim. .................................................................................................................3

    II.   *Matlock*, *Humphrey*, and *Samson*: Three overlapping TCPA cell phone cases
against United. ..........................................................................................................4

ARGUMENT .....................................................................................................................5

    I.    At a minimum, the Court should stay this case pending the U.S. Supreme Court's
decision on whether to invalidate the TCPA's cell phone restriction in its entirety. ..........5

        A.    Denying a stay pending the U.S. Supreme Court's decision will prejudice
United. ............................................................................................................6

        B.    Granting a stay will not prejudice Plaintiff because it will be brief, he does
not seek immediate judicial intervention, and he does not allege a continuing
violation. .......................................................................................................8

        C.    Granting a temporary stay will promote the orderly course of justice in this
case. ..............................................................................................................9

    II.    Alternatively, the Court should dismiss, transfer, or stay this case under the
first-to-file rule. ......................................................................................................10

        A.    *Matlock* and *Humphrey* predate Samson's complaint by more than five years. ......11

        B.    *Matlock/Humphrey* and *Samson* involve substantially similar parties. ...................11

        C.    *Matlock/Humphrey* and *Samson* raise substantially similar issues..........................12

CONCLUSION ...............................................................................................................13

MOTION TO STAY PENDING SUPREME COURT
DECISION, OR TO DISMISS, TRANSFER, OR STAY
UNDER FIRST-TO-FILE RULE - PAGE 2
CASE NO. 2:19-CV-00175-JLR

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41ˢᵗ Floor
San Francisco, CA 94104
(t) 415 293-6800 | (f) 415 293-6899
www.bsfllp.com

1    United HealthCare Services, Inc. (United) respectfully moves to stay this case until the

2    Supreme Court decides *Barr v. American Association of Political Consultants, Inc.*, No. 19-631,

3    *cert. granted*, Jan. 10, 2020.  United alternatively moves to dismiss, transfer, or stay under the

4    first-to-file rule.

5    ## FACTUAL BACKGROUND

6    **I.    The Supreme Court may invalidate the TCPA provision underlying Plaintiff's
        only claim.**

7
8    Earlier this year, the U.S. Supreme Court granted certiorari to review the

9    constitutionality of the TCPA's cell phone restriction, 47 U.S.C. § 227(b)(1)(A)(iii)—the same

10   provision on which Plaintiff bases his claim.  *Compare Barr v. Am. Ass'n of Political

11   Consultants, Inc.*, No. 19-631, SCOTUSblog, https://www.scotusblog.com/case-files/cases/barr-

12   v-american-association-of-political-consultants-inc/ (cert. granted on January 10, 2020), *with

13   Samson* Am. Compl. ¶¶ 5.2, 7.1 (pleading cell phone claim under § 227(b)(1)(A)(iii)), *and* ECF

14   No. 69.  The constitutionality of the cell phone restriction is at issue because two circuits held

15   that a content-based exception within § 227(b)(1)(A)(iii) (for calls made to collect federal

16   government debt) violates the First Amendment.  *See Duguid v. Facebook, Inc.*, 926 F.3d 1146,

17   1153-56 (9th Cir. 2019); *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 167-68

18   (4th Cir. 2019).

19   Respondents argue that the TCPA's cell phone restriction is invalid.  *See* Br. for

20   Respondents at 33–51 (Mar. 25, 2020).  And they are likely to prevail if history is any guide.

21   When the Court grants certiorari, it reverses approximately 73 percent of the time.  *See, e.g.*,

22   Hon. Timothy B. Dyk, *Thoughts on the Relationship Between the Supreme Court and the

23   Federal Circuit*, 16 Chi.-Kent J. Intell. Prop. 67, 72 (2016).  This reversal rate is even higher

24   where, as here, there is no circuit split.  *See, e.g.*, Stephen L. Wasby, *How the Ninth Circuit

25   Fares in the Supreme Court: The Intercircuit Conflict Cases*, 1 Seton Hall Circuit Rev. 119, 128

26   (2005).

27

MOTION TO STAY PENDING SUPREME COURT
DECISION, OR TO DISMISS, TRANSFER, OR STAY
UNDER FIRST-TO-FILE RULE - PAGE 3
CASE NO. 2:19-CV-00175-JLR

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(t) 415 293-6800 | (f) 415 293-6899
www.bsfllp.com

II.    *Matlock*, *Humphrey*, and *Samson*: Three overlapping TCPA cell phone cases against United.

In 2013, a plaintiff brought a case against United that seeks to certify a nationwide class of all people "who received any telephone call/s" from United to their "cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice." Decl. of Maxwell V. Pritt (Pritt Decl.), Ex. A, Compl. ¶ 24, *Matlock v. United HealthCare Servs., Inc.*, No. 13-cv-2206, ECF No. 2 (E.D. Cal. Oct. 22, 2013). That case is currently stayed. Minute Order, *Matlock*, No. 13-cv-2206, ECF No. 59 (Oct. 29, 2019). Before it was stayed, however, the *Matlock* court consolidated a later-filed case, *Humphrey v. United HealthCare Services, Inc.*, No. 2:14-cv-01792 (E.D. Cal.), which had been transferred from the Northern District of Illinois. *See Humphrey v. United HealthCare Services, Inc.*, No. 14-cv-1157 (N.D. Ill.). In *Humphrey*, the "[p]laintiff seeks to represent a class of consumers who was called by United Healthcare using an artificial or pre-recorded voice without the consent of the called party." Pritt Decl., Ex. B, *Humphrey* Compl. ¶ 20, No. 13-cv-2206, ECF No. 48 (Feb. 28, 2014).

Similarly, in this case, Samson seeks to certify a nationwide class of "[a]ll persons or entities in the United States who, on or after four years before the filing of this action, received a call to their cellular telephone line with a pre-recorded message, made by or on behalf of Defendant." Compl., ¶ 7.1. Samson alleges United called his cell phone with pre-recorded messages intended for others. *Id.*, ¶ 12. Those people are United members or others who consented to United's calls, and who rely on those calls to understand, use, and maintain their healthcare coverage.

Plaintiff has taken discovery of three United teams that make outbound calls. But his putative class is not limited by team. Rather, it would include dozens of teams that place many types of calls intended for United's 45 million members who have many different health care needs. The parties agreed to stay discovery and motion practice pending an ongoing and

MOTION TO STAY PENDING SUPREME COURT
DECISION, OR TO DISMISS, TRANSFER, OR STAY
UNDER FIRST-TO-FILE RULE - PAGE 4
CASE NO. 2:19-CV-00175-JLR

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(t) 415 293-6800 | (f) 415 293-6899
www.bsfllp.com

productive mediation.  *See* Order Extending Case Deadlines to Allow Mediation, ECF No. 69 (Dec. 31, 2019).

Plaintiff nonetheless informed United that he intends to move in the near future to amend his complaint.  United's understanding is that Plaintiff's amended complaint will delete the putative class in the Complaint and seek to certify two new nationwide classes: (1) a "re-assigned number" class of people who were assigned a number that previously belonged to a United member (the "Reassigned Number Class"); and (2) a class of people who United called after they asked not to be called (the "Do Not Call Class").  These proposed putative classes differ drastically from the class alleged in the Complaint on which discovery has been based, and are defined to include calls that are subsumed by the putative classes alleged in *Matlock* and *Humphrey*.

## ARGUMENT

**I.     At a minimum, the Court should stay this case pending the U.S. Supreme Court's decision on whether to invalidate the TCPA's cell phone restriction in its entirety.**

United respectfully requests that the Court stay this case pending the Supreme Court's impending decision in *Barr v. American Association of Political Consultants*, No. 19-631.  That decision likely will void the TCPA's cell phone restriction—and with it, Plaintiff's only remaining claim in this case.[1]  As discussed below, courts in this District and Circuit (including this Court) have stayed TCPA cases for far less.  *See, e.g.*, *Lennartson v. Papa Murphy's Holdings, Inc.*, 2016 WL 51747, at *5 (W.D. Wash. Jan. 5, 2016); *Kwan v. Clearwire Corp.*, 2011 WL 1213176, at *3 (W.D. Wash. Mar. 29, 2011) (Robart, J.); *Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015) (staying TCPA case and collecting five other cases that were stayed pending a Supreme Court decision).

---

[1] Plaintiff dismissed his two Washington state claims on December 31, 2019.  *See* Dkt. 68.

Three factors inform whether to stay this case pending a Supreme Court decision: "[A] the hardship or inequity that a party may suffer in being required to go forward; [B] the possible damage that may result from granting a stay; and [C] the orderly course of justice 'measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Kwan*, 2011 WL 1213176, at *2 (quoting *CMAX, Inc. v. Hall*, 300 F.3d 265, 268 (9th Cir. 1962)). All three factors support staying this case.

**A.      Denying a stay pending the U.S. Supreme Court's decision will prejudice United.**

The hardship and inequity United will suffer if this case is required to go forward pending *American Association of Political Consultants* is more than sufficient to justify a stay. Indeed, this Court has stayed other TCPA cases to await Supreme Court decisions when they involved a lower probability of a decision in the defendant's favor, and a lower impact of such a decision.

In *Kwan*, there was a "significant possibility" that Plaintiff's claims would "turn on the Supreme Court's opinion" in the then-pending *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). 2011 WL 1213176, at *3. This Court reasoned that *Concepcion* could limit—but not eliminate—discovery. That was enough to justify a stay, because "[t]he burdens associated with discovery in a putative class action are substantially greater than in an individual arbitration." *Id.* It was immaterial that the deadline for plaintiff's motion for class certification was only a week away. *See id.* at *1 (April 7 deadline for class certification motion; stay issued on March 29).

In *Lennartson*, 2016 WL 51747, at *4–5, the Court stayed plaintiff's TCPA case for the then-pending *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). The Court conceded that even if *Spokeo* came down in defendant's favor, the plaintiff would still have standing (and thus a TCPA claim). *Id.* at *5. Yet the Court stayed the case because "*Spokeo* could simplify or complicate

MOTION TO STAY PENDING SUPREME COURT
DECISION, OR TO DISMISS, TRANSFER, OR STAY
UNDER FIRST-TO-FILE RULE - PAGE 6
CASE NO. 2:19-CV-00175-JLR

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(t) 415 293-6800 | (f) 415 293-6899
www.bsfllp.com

1    the class certification process.  For example, it could limit the size of Lennartson's putative class

2    . . . ." *Id.*

3         Here, the impact of a favorable decision is much greater than in *Kwan* or *Lennartson*.  If

4    the Supreme Court invalidates the TCPA's cell phone restriction, Plaintiff's sole claim will *fail*

5    *in its entirety*.  Plaintiff does not—and cannot—allege any other violation of the TCPA, because

6    he was called only on his *cell phone*.  Compl., ¶ 1.1.  And even if he had been called on a

7    landline, those calls would not be TCPA violations under regulations that shield non-commercial

8    calls (including healthcare calls) to *non*-cellular lines.  *See TCPA Rules and Regulations*, 7 FCC

9    Rcd. 8752, 8782 (1992); *accord* 47 C.F.R. § 64.1200(a)(3)(ii) (non-commercial), (v) (health care

10   message).

11        In addition, it is likely the Supreme Court will strike down the TCPA's cell phone

12   restriction in *American Association of Political Consultants*.  Certiorari statistics and the Court's

13   First Amendment law make this clear.  When the Court grants certiorari, it reverses about 73

14   percent of the time.  *See, e.g.*, Dyk, *supra*, at 72.  This reversal rate is even higher where, as

15   here, there is no circuit split.  *See, e.g.*, Wasby, *supra*, at 128; *see also Duguid*, 926 F.3d at 1156

16   (following the Fourth Circuit and severing the TCPA cell phone restriction's government debt

17   exception).  So the Supreme Court is likely to reverse in *American Association of Political*

18   *Consultants*.

19        Reversal entails either saving the TCPA's cell phone restriction in its entirety—

20   government debt exception and all—or invalidating it entirely.  The former is highly unlikely, as

21   it would repudiate the Supreme Court's recent First Amendment jurisprudence, which subjects

22   to fatal strict scrutiny any restriction on speech that "draws distinctions based on the message a

23   speaker conveys."  *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015).  The TCPA's cell

24   phone restriction does just that.  It bans calls to cell phones unless they are "made solely to

25   collect a debt owed to or guaranteed by the United States."  47 U.S.C. § 227(b)(1)(A)(iii).  Its

26   applicability "thus depend[s] entirely on the communicative content of the [call]."  *Reed*, 135 S.

27   Ct. at 2227; *see also McCullen v. Coakley*, 573 U.S. 464, 479 (2014).  And striking the cell

MOTION TO STAY PENDING SUPREME COURT
DECISION, OR TO DISMISS, TRANSFER, OR STAY
UNDER FIRST-TO-FILE RULE - PAGE 7
CASE NO. 2:19-CV-00175-JLR

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(t) 415 293-6800 | (f) 415 293-6899
www.bsfllp.com

1   phone restriction would mirror the Court's treatment of other content-based speech restrictions.

2   *See, e.g.*, *Reed*, 135 S. Ct. at 2224, 2227 (striking down entire "provisions" for being content-

3   based, not just severing unconstitutional "exemptions"); *Arkansas Writers' Project, Inc. v.*

4   *Ragland*, 481 U.S. 221, 232, 234 (1987) (same); Br. for Respondents 33–50 (discussing caselaw

5   in depth).

6        Moving forward with this case now will require United to divert substantial resources

7   and employee time from providing healthcare services to members and coordinating responses

8   to the COVID-19 global pandemic, to engaging in further internal investigation, discovery, and

9   motion practice in this case, including expert depositions and class certification. *See* Decl. of

10   Ryan C. Wong ¶¶ 2–13. These costs are not recoverable even after the Supreme Court strikes

11   down the TCPA's cell phone provision in the coming months. Accordingly, the first stay factor

12   urges this Court to wait for the Supreme Court's decision in *American Association of Political*

13   *Consultants*.

14        **B.**    **Granting a stay will not prejudice Plaintiff because it will be brief, he**

15              **does not seek immediate judicial intervention, and he does not allege**
           **a continuing violation.**

16        A stay will not prejudice Plaintiff for at least three reasons. First, whether Plaintiff can

17   proceed with his case will be decided soon. The Supreme Court granted certiorari in *American*

18   *Association of Political Consultants* on January 10, 2020, and the case will be fully briefed this

19   month. Argument was scheduled for April 22, but the Supreme Court delayed oral argument

20   temporarily for all cases remaining cases on its calendar due to the COVID-19 emergency. *See*

21   U.S. Supreme Court, Press Release Regarding Postponement of April Oral Arguments (Apr. 3,

22   2020), https://www.supremecourt.gov/publicinfo/press/pressreleases/pr_04-03-20. The Court

23   advised that it:

24             will consider rescheduling some cases from the March and April

25             sessions before the end of the Term, if circumstances permit in
          light of public health and safety guidance at that time. The Court

26             will consider a range of scheduling options and other alternatives if
          arguments cannot be held in the Courtroom before the end of the

27             Term.

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(t) 415 293-6800 | (f) 415 293-6899
www.bsfllp.com

1    *Id.* Thus, there is still a substantial chance that the decision in *American Association of Political*

2    *Consultants* will be handed down by the end of this term, which is typically in late June or early

3    July. *See Supreme Court Procedures*, https://www.uscourts.gov/about-federal-

4    courts/educational-resources/about-educational-outreach/activity-resources/supreme-1. Even if

5    COVID-19 were to defer the decision to the end of *next* term, that would be a delay of a "year or

6    so"—which would still support a stay. *Centeno v. Inslee*, 310 F.R.D. 483, 491 (W.D. Wash.

7    2015) (granting defendant's motion to stay case in September—more than nine months before

8    the end of the term—given the then-pending *Friedrichs v. California Teachers Ass'n*, 136 S. Ct.

9    1083 (2016)); *see also Eric B. Fromer Chiropractic*, 2015 WL 6579779, at *2 (collecting five

10   cases in which the district court issued stays in June or July because of Supreme Court cases

11   scheduled for *next* term—such as *Spokeo*, which the Court decided about 11 months after those

12   stays).

13           Second, Plaintiff does not seek immediate judicial intervention in this case. Rather,

14   Plaintiff filed his complaint in January 2019 and has stipulated to case management extensions.

15   And for the past few months he has agreed to stay discovery and pursue mediation, which is

16   ongoing. He cannot simultaneously pursue these goals while claiming a brief pause in litigation

17   will harm him.

18           Finally, Plaintiff does not allege a continuing TCPA violation. He allegedly received his

19   last unlawful call in January 2019. Compl., ¶ 6.7. Accordingly, this brief stay will not prejudice

20   Plaintiff.

21   **C.    Granting a temporary stay will promote the orderly course of justice**
22   **       in this case.**

23           A stay will promote the orderly course of justice. This Court held that a stay furthers

24   justice where "[a]rguably, the Supreme Court's decision in [the pending case] will simplify the

25   present issue in this case." *Kwan*, 2011 WL 1213176, at *3 (internal quotation marks omitted).

26   This Court also recognized that a stay is especially important in freedom of speech cases, where

27

MOTION TO STAY PENDING SUPREME COURT
DECISION, OR TO DISMISS, TRANSFER, OR STAY
UNDER FIRST-TO-FILE RULE - PAGE 9
CASE NO. 2:19-CV-00175-JLR

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41ˢᵗ Floor
San Francisco, CA 94104
(t) 415 293-6800 | (f) 415 293-6899
www.bsfllp.com

1    "a stay will facilitate guidance by the ultimate arbiter of the First Amendment." *Centeno*, 310
2    F.R.D. at 491.

3          As discussed above, the Supreme Court will "arguably"—if not likely—invalidate the
4    TCPA's cell phone provision, and thus Plaintiff's remaining cause of action, in *American*
5    *Association of Political Consultants*.  That would of course "simplify the present issue in this
6    case."  A stay will also "facilitate guidance by the ultimate arbiter of the First Amendment," the
7    Supreme Court, because one of the questions presented in *American Association of Political*
8    *Consultants* is "[w]hether the government-debt exception to the TCPA's automated-call
9    restriction violates the First Amendment."  Question Presented, *Barr v. Am. Ass'n Pol.*
10   *Consultants*, No. 19-631, https://www.supremecourt.gov/docket/docketfiles/html/qp/19-
11   00631qp.pdf (cert. granted Jan. 10, 2020).  For both of these reasons, "[l]ittle advantage in
12   proceeding with discovery and motions practice in the interim exists."  *Lennartson*, 2016 WL
13   51747, at *5.

14         In sum, given the prejudice to United if a stay is denied, the lack of prejudice to Plaintiff
15   if one is granted, and the importance of a stay in promoting an orderly course of justice, the
16   Court should stay this case pending the Supreme Court's decision in *American Association of*
17   *Political Consultants*.

18   **II.    Alternatively, the Court should dismiss, transfer, or stay this case under the
19          first-to-file rule.**

20         If the Court declines to stay this case pending *American Association of Political*
21   *Consultants*, then it should dismiss, transfer, or stay the case under the first-to-file rule.  The
22   "rule is a 'generally recognized doctrine of federal comity' that urges the Court to transfer, stay,
23   or dismiss an action if a case with substantially similar issues and parties was previously filed in
24   another district court." *Pars Equality Ctr. v. Pompeo*, 2018 WL 6523135, at *3 (W.D. Wash.
25   Dec. 12, 2018) (Robart, J.) (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94 (9th
26   Cir. 1982)).  The rule "alleviate[s] the burden placed on the federal judiciary by duplicative
27   litigation" and "prevent[s] the possibility of conflicting judgments."  *Id.* (quoting *Wallerstein v.*

*Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013)).  Thus, it "should not be disregarded lightly."  *Id.* (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)).

A three-factor test informs whether the first-to-file rule should be applied: "[A] the chronology of the actions; [B] the similarity of the parties; and [C] the similarity of the issues." *Id.* at *3 (quoting *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015)).  "Notwithstanding these specific factors, the first-to-file rule 'is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration.'"  *Id.* (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 844 (9th Cir. 1986)).  All three factors support dismissing, transferring, or staying this case.

### A.    *Matlock* and *Humphrey* predate Samson's complaint by more than five years.

The first factor is the chronology of the cases.  The first-filed cases similar to *Samson* are two consolidated putative class actions pending in the U.S. District Court for the Eastern District of California, *Matlock v. United HealthCare Services, Inc.* and *Humphrey v. United Healthcare Services, Inc.*  Matlock filed his complaint on October 22, 2013—more than five years before Samson did—claiming that United called his cell phone in violation of the TCPA.  *See* Pritt Decl., Ex. A, *Matlock* Compl. ¶¶ 13–24, No. 13-cv-2206, ECF No. 2.  And Humphrey filed his complaint on February 18, 2014—nearly five years before Samson did—also claiming the same. *See* Pritt Decl., Ex. B, *Humphrey* Compl. ¶¶ 5–6, 17, No. 13-cv-2206, ECF No. 48.  The timing of these filings weighs heavily in favor of applying the first-to-file rule.  *See, e.g.*, *Pars Equality Ctr.*, 2018 WL 6523135, at *4 (applying rule given that first-filed case pre-dated similar case by four months).

### B.    *Matlock/Humphrey* and *Samson* involve substantially similar parties.

The second factor is similarity of the parties.  The sole defendant in the putative class actions in both courts is United.  With respect to the plaintiffs, "[i]n the context of class actions,

MOTION TO STAY PENDING SUPREME COURT
DECISION, OR TO DISMISS, TRANSFER, OR STAY
UNDER FIRST-TO-FILE RULE - PAGE 11
CASE NO. 2:19-CV-00175-JLR

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41ˢᵗ Floor
San Francisco, CA 94104
(t) 415 293-6800 | (f) 415 293-6899
www.bsfllp.com

a court should compare the putative classes, rather than the named plaintiffs, to determine whether the classes encompass at least some of the same individuals." *Pars Equality Ctr.*, 2018 WL 6523135, at \*5. As explained above, the types of calls in *Matlock* (all calls regardless of whether or not they were pre-recorded) and *Humphrey* (all pre-recorded calls) subsume the types of calls at issue in both the current and the proposed putative classes in *Samson*. In particular, the *Matlock* putative class encompasses all of the other putative classes, including in this case, and includes all calls whether they were pre-recorded, made with an autodialer, or made without consent.

### C.    *Matlock/Humphrey* and *Samson* raise substantially similar issues.

The third first-to-file factor is similarity of the issues between this case and the first-filed case. Again, only substantial similarity is needed. *Pars Equality Ctr.*, 2018 WL 6523135, at \*6. But here, *all* of the issues in this case are also at issue in *Matlock* and *Humphrey*. Each case alleges that United violated the same TCPA cell phone provision. *See* Pritt Decl., Ex. A, *Matlock* Compl. ¶¶ 13, 26; Pritt Decl., Ex. B, *Humphrey* Compl. ¶ 22; *Samson* Compl., Dkt. 1, ¶¶ 5.2, 8.3. And each involves calls addressed to (and intended for) a United member, not the plaintiff. *See* Pritt Decl., Ex. A, *Matlock* Compl. ¶ 21; Pritt Decl., Ex. B, *Humphrey* Compl. ¶ 6; *Samson* Compl.. Dkt. 1, ¶ 6.12. Moreover, each case seeks treble damages for willful or knowing violations plus injunctive relief. *See* Pritt Decl., Ex. A, *Matlock* Compl. ¶¶ 46–48; Pritt Decl., Ex. B, Humphrey Compl. ¶¶ 30, Prayer for Relief at b; *Samson* Compl., Dkt. 1, ¶¶ 9.3, Prayer for Relief at D.

This similarity of issues means discovery will overlap. And because discovery in TCPA cases is substantial and expensive, undergoing discovery twice on overlapping putative classes will waste resources and possibly result in different sets of discovery based on conflicting court orders. And while the parties in this case have engaged in discovery, thus far it has been limited primarily to only a few United teams and their outbound dialing campaigns that included Plaintiff's number. But Plaintiff intends to seek leave to amend his complaint and to move to

MOTION TO STAY PENDING SUPREME COURT
DECISION, OR TO DISMISS, TRANSFER, OR STAY
UNDER FIRST-TO-FILE RULE - PAGE 12
CASE NO. 2:19-CV-00175-JLR

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41ˢᵗ Floor
San Francisco, CA 94104
(t) 415 293-6800 | (f) 415 293-6899
www.bsfllp.com

1  certify a class or classes that would require extensive discovery beyond what has been done so

2  far.

3          Given the close match on all three factors, dismissal is "more appropriate" than a stay

4  because "the putative class members in this suit can obtain relief in" *Matlock* and *Humphrey*.

5  *Fisher v. Duff*, 2016 WL 3280429, at *3 (W.D. Wash. 2016) (dismissing suit brought by

6  Samson's counsel, Terrell Marshall, because "'[d]ismissal is proper where the court of first

7  filing provides adequate remedies'" (quoting *Worldwide, Ltd.*, 544 F. Supp. 2d at 963)).

8  Regardless, the Court should at least transfer the case to the *Matlock* court.  That would promote

9  judicial economy since the *Matlock* court already consolidated *Humphrey* with *Matlock*.  *See*

10 Related Case Order at 1–2, *Humphrey v. United HealthCare Services, Inc.*, No. 14-cv-01792,

11 ECF No. 41 (E.D. Cal., Sept. 4, 2014) ("The actions involve many of the same defendants and

12 are based on the same or similar claims, the same property transaction or event, similar

13 questions of fact and the same questions of law, and would therefore entail a substantial

14 duplication of labor if heard by different judges."); *id.*, Order, ECF No. 51 (Oct. 29, 2014)

15 (consolidating *Humphrey* with *Matlock*).

16                                    **CONCLUSION**

17         For the foregoing reasons, United requests that the Court grant Plaintiff's motion and

18 stay this case pending *American Association of Political Consultants*, or dismiss, stay, or

19 transfer this case to the U.S. District Court for the Eastern District of California under the first-

20 to-file rule.

21

22

23

24

25

26

27

MOTION TO STAY PENDING SUPREME COURT
DECISION, OR TO DISMISS, TRANSFER, OR STAY
UNDER FIRST-TO-FILE RULE - PAGE 13
CASE NO. 2:19-CV-00175-JLR

BOIES SCHILLER FLEXNER LLP
44 Montgomery Street, 41ˢᵗ Floor
San Francisco, CA 94104
(t) 415 293-6800 | (f) 415 293-6899
www.bsfllp.com

1

Dated: April 8, 2020                  By:   */s/ Maxwell V. Pritt*

2                                            Quyen L. Ta, *Admitted Pro Hac Vice*
                                             Maxwell V. Pritt, *Admitted Pro Hac Vice*
3                                            BOIES SCHILLER FLEXNER LLP
                                             44 Montgomery Street, 41st Floor
4                                            San Francisco, CA 94104
                                             Telephone:   (415) 293-6800
5                                            Facsimile:   (415) 293-6899
                                             Email:    qta@bsfllp.com
6                                                        mpritt@bsfllp.com

7

8    Dated: April 8, 2020                  By:   */s/ Barbara J. Duffy*

9                                            Barbara J. Duffy, WSBA No. 18885
                                             LANE POWELL PC
10                                           1420 Fifth Avenue, Suite 4200
                                             P.O. Box 91302
11                                           Seattle, WA 98111-9402
                                             Telephone: (206) 223-7944
12                                           Facsimile:  (206) 223-7107
                                             Email:    duffyb@lanepowell.com
13

14                                           *Attorneys for Defendant*
                                             *United HealthCare Services, Inc.*
15

16

17

18

19

20

21

22

23

24

25

26

27

MOTION TO STAY PENDING SUPREME COURT
DECISION, OR TO DISMISS, TRANSFER, OR STAY
UNDER FIRST-TO-FILE RULE - PAGE 14
CASE NO. 2:19-CV-00175-JLR