UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANTZ SAMSON,<br><br>                 Plaintiff,<br>    v.<br><br>UNITED HEALTHCARE SERVICES, INC.,<br><br>                 Defendant. | CASE NO. C19-0175JLR<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION AND STAYING THE CASE |

## I. INTRODUCTION

Before the court is Defendant United HealthCare Services, Inc.'s ("United") motion to stay this case until the United States Supreme Court decides *Barr v. American Association of Political Consultants, Inc.*, No. 19-631, *cert. granted*, Jan. 10, 2020 ("*Barr v. AAPC*"); or, in the alternative, to dismiss, transfer, or stay this case under the first-to-file rule. (*See* Mot. (Dkt. # 75); *see also* Reply (Dkt. # 87).)  Plaintiff Frantz Samson opposes the motion. (*See* Resp. (Dkt. # 85).)  The court has considered the

ORDER - 1

motion, the parties' submissions concerning the motion, the relevant portions of the record, and the applicable law. Being fully advised, the court GRANTS in part and DENIES in part United's motion for the reasons set forth below and STAYS the case.

## II.  BACKGROUND

This case arises under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). (*See generally* Am. Compl. (Dkt. # 82).) Mr. Samson alleges that he received automated telemarketing calls on his cellular telephone from United beginning in March 2018. (*Id.* ¶ 1.1.) He further alleges that he "has never requested information from United Healthcare, has never provided his cell phone number to United Healthcare, and did not consent to receive calls from United Healthcare." (*Id.* ¶ 1.2.) Mr. Samson seeks to certify this case as a class action on behalf of two classes—a "Wrong Number Class" and a "Do-Not-Call Class":

> <u>Wrong Number Class</u>: All persons or entities in the United States (1) to whom Defendant placed a call, (2) on or after four years before the filing of this action (3) via its Avaya dialer or LiveVox IVR dialing system, (4) directed to a number assigned to a cellular telephone service, but not assigned to a United Healthcare member at the time of the call.
>
> <u>Do-Not-Call Class</u>: All persons or entities in the United States who received a call to their cellular telephone line made by or on behalf of Defendant using its Avaya dialer or LiveVox IVR dialing system on one or more dates after Defendant's records reflect that the telephone number was flagged or documented as "do not call," "final do not contact" or otherwise recorded as a number not to be called.

(*Id.* ¶ 6.1.) Mr. Samson brings two claims for relief under the TCPA on behalf of these proposed classes. (*Id.* ¶¶ 7.1-8.4.)

//

At least three cases similar to this one are pending in the United States District Court for the Eastern District of California: *Matlock v. United HealthCare Services, Inc.*, Case No. 2:13-cv-02206 (E.D. Cal.); *Humphrey v. United HealthCare Services, Inc.*, Case No. 2:14-cv-01792 (E.D. Cal.); and *Gonzalez v. Optum, Inc.*, Case No. 2:20-CV-01129 (E.D. Cal.).

*Matlock* was filed in the Eastern District of California on October 22, 2013. *Matlock*, No. 2:13-cv-02206, Dkt. # 2 ("*Matlock* Compl."). The named plaintiff in that case, Jack Matlock, alleges that he began receiving calls from United on his cellular telephone in October 2013 that were directed to an individual named Willard Hanlin. *Id.* ¶¶ 13-14. Mr. Matlock further alleges that the calls he received were automated and utilized an artificial or prerecorded voice, in violation of the TCPA. *Id.* ¶¶ 16-18. Mr. Matlock claims that he is not Willard Hanlin and that he did not provide his phone number to United or consent to receive automated calls from United. *Id.* ¶ 21. Mr. Matlock seeks to certify a class consisting of:

> All persons within the United States who received any telephone call/s from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice within the four years prior to the filling of the Complaint.

*Id.* ¶ 24.

On March 20, 2014, then Chief Judge Morrison C. England, Jr. stayed Mr. Matlock's case and denied Mr. Matlock's motion for class certification without prejudice as a result of the stay. *See Matlock*, No. 2:13-cv-02206, Dkt. # 27. Judge England stayed the case at United's request pending resolution of a petition for expedited declaratory

ruling with the Federal Communications Commission on the meaning of certain terminology in the TCPA.  *Id.* at 2-4.  *Matlock* remains stayed.  *Matlock*, No. 2:13-cv-02206, Dkt. ## 60-61.

*Humphrey* was initially filed in the United States District Court for the Northern District of Illinois on February 18, 2014.  *Humphrey*, No. 2:14-cv-01792, Dkt. # 1 ("*Humphrey* Compl.").[1]  The named plaintiff in that case, Andy Humphrey, alleges that he began receiving calls from United on his cellular telephone in December 2013 that were directed to an individual named Johnny Perez.  *Id.* ¶ 6.  Like Mr. Matlock and Mr. Samson, Mr. Humphrey alleges that the calls he received were automated and utilized an artificial or prerecorded voice, in violation of the TCPA.  *Id.* ¶¶ 6, 10.  Mr. Humphrey claims that he had no business relationship with United and did not consent to receiving phone calls from United.  *Id.* ¶ 5.  Mr. Humphrey seeks to certify a class consisting of: "consumers who [were] called by United Healthcare using an artificial or pre-recorded voice without the consent of the called party."  *Id.* ¶ 20.

On July 16, 2014, Judge Sara L. Ellis in the Northern District of Illinois granted a motion to transfer *Humphrey* to the Eastern District of California based on the first-to-file rule.  *See Humphrey*, No. 2:14-cv-01792, Dkt. # 34.  The court concluded that "transferring this case to the Eastern District of California, where *Matlock* is pending,

---

[1] The initial case filings in *Humphrey* were filed in the Northern District of Illinois. Additionally, because *Humphrey* was eventually consolidated with *Matlock*—as discussed below—some of the initial case filings in *Humphrey* were also added to the *Matlock* docket.  *See, e.g.*, *Matlock*, No. 2:13-cv-02206, Dkt. # 48 (copy of *Humphrey* complaint).  For all pre-consolidation filings, the court cites the docket entries from the *Humphrey* docket in the Eastern District of California for convenience.

best promotes judicial economy and prevents duplicative litigation in separate districts." *Id.* at 8. After the case was transferred to the Eastern District of California, it was reassigned to Judge English, consolidated with *Matlock* under *Matlock*'s case number, and stayed for the same reasons that *Matlock* was stayed. *See* No. 2:14-cv-01792, Dkt. ## 41, 51. Because *Humphrey* has been consolidated with *Matlock*, *Humphrey* also remains stayed. *See Matlock*, No. 2:13-cv-02206, Dkt. ## 60-61.

*Gonzalez* was originally filed in the United States District Court for the Western District of Texas on December 10, 2019. *Gonzalez*, No. 2:20-CV-01129, Dkt. # 1.[2] The named plaintiff in that case, Diane Gonzalez, alleges that she began receiving prerecorded messages from Optum, Inc. ("Optum")—a subsidiary of United—on her cellular telephone in September 2019. *Id.*, Dkt. # 14 ("*Gonzalez* Am. Compl.") ¶¶ 2, 26-30. Like Mr. Matlock, Mr. Samson, and Mr. Humphrey, Ms. Gonzalez alleges that the messages she received were automated and utilized an artificial or prerecorded voice in violation of the TCPA. *Id.* ¶¶ 53-54. Ms. Gonzalez claims that she did not consent to receiving phone calls from Optum. *Id.* ¶ 37. Ms. Gonzalez seeks to certify a class consisting of:

> All persons within the United States who, within the four years prior to the filing of this Complaint, received a telephone call made through the use of a prerecorded voice, from Defendant or anyone on Defendant's behalf, for the purpose of promoting Defendant's "House Calls" program.

*Id.* ¶ 42.

---

[2] Although the initial case filings in *Gonzalez* were filed in the Western District of Texas, the court cites the docket entries from the *Gonzalez* docket in the Eastern District of California for convenience.

ORDER - 5

1  On June 3, 2020, Judge Alan D. Albright in the Western District of Texas granted a motion to transfer *Gonzalez* to the Eastern District of California based on the first-to-file rule. *See Gonzalez*, No. 2:20-CV-01129, Dkt. # 35. The court concluded that "transferring this case to the Eastern District of California . . . [is] proper in light of the likelihood of substantial overlap this case has with [*Matlock* and *Humphrey*]." *Id.* at 9. After the case was transferred to the Eastern District of California, it was reassigned to Judge English due to its relation to *Matlock* and *Humphrey*. *Gonzalez*, No. 2:20-CV-01129, Dkt. # 40. On June 30, 2020, Optum moved to consolidate *Gonzalez* with *Matlock* and *Humphrey* and to stay *Gonzalez* for the same reasons that *Matlock* and *Humphrey* were stayed. *See id.*, Dkt. # 46. That motion is currently pending.

## III.   ANALYSIS

In the current motion, United seeks two alternate forms of relief. First, United asks the court to stay this case pending the United States Supreme Court's decision in *Barr v. AAPC*. (*See* Mot. at 3.) Alternatively, United asks the court to dismiss, transfer, or stay this case under the first-to-file rule. (*Id.*) The court addresses each of those requested forms of relief in turn.

### A.   Motion to Stay

United argues this case should be stayed pending the United States Supreme Court's decision in *Barr v. AAPC* because that case presents questions regarding the provisions of the TCPA under which Mr. Samson filed suit. (*See* Mot. at 5-10.) On July 6, 2020, the Supreme Court issued its decision in *Barr v. AAPC*. *See Barr v. Am. Ass'n of Political Consultants, Inc*, No. 19-631, --- U.S. ---, --- S. Ct. ---, 2020 WL 3633780, at *2

(U.S. July 6, 2020). As such, United's motion to stay pending the outcome of *Barr v. AAPC* is DENIED as moot.

**B.     First-to-File Rule**

The first-to-file rule is a "generally recognized doctrine of federal comity" that allows a district court to transfer, stay, or dismiss an action if a case with substantially similar issues and parties was previously filed in another district court. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94 (9th Cir. 1982); *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239-40 (9th Cir. 2015). "The rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292 (N.D. Cal. 2013). Accordingly, the first-to-file rule "should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)).

When deciding whether to transfer, stay, or dismiss a case under the first-to-file rule, a district court analyzes three factors: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Kohn*, 787 F.3d at 1240; *see also Bewley v. CVS Health Corp.*, No. C17-0803RSL, 2017 WL 5158443, at *2 (W.D. Wash. Nov. 7, 2017). Notwithstanding these specific factors, the first-to-file rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 844 (9th Cir. 1986); *see also Kohn*, 787 F.3d

at 1240 (quoting *Cradle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999) ("When applying the first-to-file rule, courts should be driven to maximize 'economy, consistency, and comity.'")). As a result, "[t]he most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade*, 946 F.2d at 628.

United argues that the court should apply the first-to-file rule to this case because *Matlock* and *Humphrey*—which have now been consolidated as one action—were filed before this case, share substantially similar parties with this case, and present the same issues that Mr. Samson's complaint presents.[3] (*See* Mot. at 10-13.) Mr. Samson does not dispute that *Matlock* and *Humphrey* were filed first and present the same TCPA issues regarding United's automated calling practices that his case presents. (*See* Resp. at 9-12; *see also* Reply at 12 (arguing that "[Mr. Samson] concedes the first and third factors" of the first-to-file analysis).) Instead, Mr. Samson rests his opposition to United's first-to-file motion on the similarity-of-the-parties factor and the equitable implications of dismissing, staying, or transferring this case. (*See* Resp. at 9-12.) Thus, the court considers it uncontested that the chronology of filing and similarity of issues factors weigh in favor of applying the first-to-file rule to this case and focuses its attention on the similarity of the parties and the equities.

Regarding the similarity of the parties, Mr. Samson argues that the parties in this case are not the same as the parties in *Matlock* because the proposed classes in the two

---

[3] Although it is relevant that there is a third TCPA case involving a United subsidiary pending before Judge England in the Eastern District of California in *Gonzalez*, United's motion does not rely on *Gonzalez* or argue that *Gonzalez* should impact the court's decision under the first-to-file rule. (*See generally* Mot. at 10-13.)

cases "do not even overlap." (*Id.* at 9.) The first-to-file rule "does not require exact identity of the parties." *Kohn*, 787 F.3d at 1240. Rather, the rule may apply where a court concludes that two actions present "substantial similarity of parties." *Id.*; *see also Music Grp. Servs. US, Inc. v. inMusic Brands, Inc.*, No. C13-0183MJP, 2013 WL 1499564, at *2 (W.D. Wash. Apr. 11, 2013) ("The requirement of similar parties is satisfied if the parties are substantially similar, although nonidentical."). In the context of class actions, a court should compare the putative classes, rather than the named plaintiffs, to determine whether the classes encompass at least some of the same individuals. *Bewley*, 2017 WL 5158443, at *2; *see also Hilton v. Apple, Inc.*, No. C-13-2167 EMC, 2013 WL 5487317, at *7 (N.D. Cal. Oct. 1, 2013) (collecting cases).[4]

Mr. Samson is correct that *Matlock* proposes a time limitation on the class in this case that minimizes the overlap between the classes in *Matlock* and Mr. Samson's proposed class. Mr. Samson's "Wrong Number" class expressly states that it is limited to individuals who received automated calls from United "on or after four years before [January 9, 2019]," while the "Do-Not-Call" class implies that same limitations period applies by not stating a limitation. (*See* Am. Compl. ¶ 6.1.) Thus, Mr. Samson's classes are limited to individuals who received automated calls from United from January 9,

---

[4] As various courts have observed, if the first-to-file rule were to require a strict identity of the named plaintiffs, the rule would rarely apply in class actions. *See, e.g.*, *Hilton*, 2013 WL 5487317, at *7; *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 791 (6th Cir. 2016). "This result would be in direct conflict to the purposes of the first-to-file rule because class actions are frequently complex affairs which tax judicial resources—the very cases in which the principles of avoiding duplicative proceedings and inconsistent holdings are at their zenith." *Hilton*, 2013 WL 5487317, at *7.

2015 to the present. Mr. Matlock's proposed class is limited to individuals who received automated calls from United "within the four years prior to the filling of the Complaint." *Matlock* Compl. ¶ 24. Because Mr. Matlock's complaint was filed on October 22, 2013, it is limited to individuals who received automated calls from United from October 22, 2009 to October 22, 2013. Thus, unless some of the class members in *Matlock* continued receiving calls from United into January 2015, the proposed classes in *Matlock* and this case do not overlap.

However, Mr. Samson cannot ignore *Humphrey*, which has been consolidated with *Matlock*. *See Humphrey*, No. 2:14-cv-01792, Dkt. # 51 (consolidating *Humphrey* with *Matlock*). The proposed class in *Humphrey* includes no time limitation on the class definition. *See Humphrey* Compl. ¶ 20. Mr. Humphrey seeks to certify a class consisting of "consumers who [were] called by United Healthcare using an artificial or pre-recorded voice without the consent of the called party." *Id.* Because *Humphrey* was filed in February 2014 and its putative class includes members who received calls up to and including the present, the *Humphrey* class necessarily subsumes the class in this case. Thus, the court concludes that the similarity-of-parties factor weighs in favor of applying the first-to-file rule.

The court also rejects Mr. Samson's argument that the equities weigh in favor of "disregard[ing] the first-to file doctrine." (*See* Resp. at 10.) A court may decline to apply the first-to-file rule "for reasons of equity," such as "when the filing of the first suit evidences bad faith, anticipatory suit, or forum shopping." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006); *see also Alltrade*, 946

F.2d at 628. Mr. Samson argues that United's motion to apply the first-to-file rule "smacks of bad faith and forum shopping" because United failed to inform the court that *Matlock* has been stayed while *Humphrey* has been closed. (*See* Resp. at 12.) But United did no such thing. United's motion clearly states that *Matlock* "is currently stayed" and that *Humphrey* was consolidated with *Matlock* (*see* Mot. at 4), and United's reply reiterates those same points (*see* Reply at 10 n.7, 12 n.8). Thus, it appears that Mr. Samson's arguments that United acted in bad faith and is forum shopping misunderstand United's briefing.

The thrust of Mr. Samson's equitable argument is that this case should be allowed to proceed despite the first-to-file rule because *Humphrey* and *Matlock* have been stayed for too long. (*See* Resp. at 10-11.) Ironically, this argument smacks of forum shopping. Mr. Samson disagrees with Judge England's decision to stay *Matlock* and *Humphrey* pending the outcome of FCC proceedings on the meaning of certain language in the TCPA and would prefer to have this case proceed so that his claim will not be delayed while *Matlock* and *Humphrey* are resolved. (*See id.*) But Mr. Samson's displeasure with the procedural decisions and status of *Matlock* and *Humphrey* does not entitle him to circumvent the first-to-file rule and ask a different court in a different jurisdiction to decide his claims more promptly.

As Mr. Samson points out, the court previously agreed with Mr. Samson and rejected United's attempt to stay this case pending resolution of FCC proceedings on

//

//

interpretation of the TCPA.  (*See* Resp. at 10-11; 5/20/19 Order (Dkt. # 41) at 9-12.[5])  The fact that the court decided that issue differently than Judge England did in *Matlock* and *Humphrey* only highlights the importance of applying the first-to-file rule in this case.  The first-to-file rule is designed to avoid duplicative litigation and the risk that courts reach conflicting decisions on the same issues involving the same parties.  *See Wallerstein*, 967 F. Supp. 2d at 1292 ("The rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments.").  Indeed, United's delay in raising the first-to-file doctrine essentially rewarded Mr. Samson—who is likely a member of the proposed class in *Humphrey*—with a second bite at the apple on Judge England's decision to stay *Humphrey* pending the FCC proceedings.  Now that United has raised the doctrine, however, the court agrees with United—as Judge Ellis and Judge Albright did in *Humphrey* and *Gonzalez*—that the first-to-file doctrine should be applied to this case in order to avoid duplicative litigation and the potential for conflicting rulings.  *Gonzalez v. Unitedhealth Grp., Inc.*, No. 6:19-CV-00700-ADA, 2020 WL 2992174, at *3 (W.D. Tex. June 3, 2020) ("Based on overarching issues present in all three cases, the Court finds that the likelihood of conflict is high if two courts were to issue conflicting rulings on the merits of these cases or the interpretations of 'called party.'"); *Humphrey v. United Healthcare Servs., Inc.*, No. 14 C 1157, 2014 WL 3511498, at *4 (N.D. Ill. July 16,

---

[5] Notably, the issue before the court in United's prior motion was the doctrine of primary jurisdiction, not the first-to-file rule.  (*See* 5/20/19 Order at 5-6.)  United did not raise the first-to-file doctrine until it filed the current motion.

2014) ("[T]he Court finds that transferring this case to the Eastern District of California, where *Matlock* is pending, best promotes judicial economy and prevents duplicative litigation in separate districts.").

Although the court concludes that the first-to-file rule should be applied to this case and recognizes the inherent efficiencies in transferring this case to Judge England so that it may be decided by the same court considering *Matlock*, *Humphrey*, and *Gonzalez*, the court lacks the authority to transfer this case to the Eastern District of California. The Ninth Circuit recently held that "[a]lthough the first-to-file rule guides the district court's exercise of discretion in handling related cases, the requirements of [28 U.S.C.] § 1404(a) cabin the exercise of that discretion." *In re Bozic*, 888 F.3d 1048, 1054 (9th Cir. 2018). That statute states that a federal district court may only transfer an action to another district or division "where it might have been brought."[6] 28 U.S.C. § 1404(a). Thus, even where the first-to-file rule applies, as the court concludes it does here, the court may only transfer this case to the Eastern District of California if venue is appropriate in that district such that this case "might have been brought" there in the first instance. *In re Bozic*, 888 F.3d at 1054.

Venue would not be proper in the Eastern District of California. Pursuant to 28 U.S.C. § 1391(b), venue may lie in (1) a district where the defendant resides; (2) a district in which "a substantial part of the events or omissions giving rise to the claim occurred";

---

[6] 28 U.S.C. § 1404(a) also allows for transfer to "any district or division to which all parties have consented," but that provision is inapplicable here because Mr. Samson opposes United's request to transfer this case. (*See* Resp. at 9-12.)

or (3) if neither of the first two provisions apply, any district in which the defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b)(1)-(3). Venue is not proper in the Eastern District of California under subsection (b)(1) because United is a Minnesota corporation with its principal place of business in Minnesota. (*See* Not. of Removal (Dkt. # 1) ¶ 4.) For purposes of determining venue for class actions under subsection (b)(2), "the 'events' in question are only those involving the named plaintiffs." *In re Bozic*, 888 F.3d at 1053. Accordingly, venue is not proper in the Eastern District of California under subsection (b)(2) because nothing in Mr. Samson's complaint suggests that any events that gave rise to his TCPA claim occurred in the Eastern District of California. (*See generally* Am. Compl.) Finally, subsection (b)(3) is inapplicable because there are appropriate venues for this action under subsections (b)(1) and (b)(2). (*See, e.g.*, *id.* ¶ 2.3 (alleging that venue is appropriate in Washington because "a substantial part of the events giving rise to Plaintiff's claims occurred in this district).) Thus, the court cannot transfer this case to the Eastern District of California.

The court also declines to dismiss this case and concludes instead that a stay is most appropriate. Although the court recognizes *Humphrey*'s resolution may provide the prospective class members in this case with sufficient relief or may resolve this case on preclusion grounds, United did not adequately support its argument on those issues in its motion. (*See* Mot. at 13 (offering a one-sentence argument that "dismissal is more appropriate than a stay because the putative class members in this suit can obtain relief in *Matlock* and *Humphrey*" (citations and internal quotations omitted).) The court will not dismiss this case based solely on United's undeveloped assertion that Mr. Samson and his

proposed class will be fully covered by *Matlock* and *Humphrey*. Instead, the court concludes that the prudent course of action is to stay this case pending resolution of *Matlock* and *Humphrey*. *See Baatz*, 814 F.3d at 795-96 (concluding that court abused its discretion by dismissing action under the first-to-file rule due to potential issues that might not be resolved in first action). As other courts have succinctly put it: "Why take chances? It is simpler just to stay the second suit." *Id.* at 796 (quoting *Asset Allocation & Mgmt. Co. v. W. Emp'rs Ins. Co.*, 892 F.2d 566, 571 (7th Cir. 1989)).

Accordingly, the court GRANTS United's alternative motion to dismiss, transfer, or stay this case and STAYS this case pending resolution of the consolidated case in *Matlock v. United HealthCare Services., Inc.*, Case No. 2:13-cv-02206 (E.D. Cal.).

## IV. CONCLUSION

For the reasons set forth above, the court GRANTS in part and DENIES in part United's motion (Dkt. # 75). Specifically, the court DENIES as moot United's request to stay this case pending resolution of *Barr v. American Association of Political Consultants, Inc.*, but GRANTS United's alternative motion to dismiss, transfer, or stay this case under the first-to-file doctrine. The court ORDERS that this case is stayed pending resolution of the consolidated case *Matlock v. United HealthCare Services, Inc.*, Case No. 2:13-cv-02206 (E.D. Cal.). Within six months of the filing date of this order, or within 20 days following the conclusion of *Matlock*, whichever is sooner, the parties shall file a joint status report describing the status of the case, and if warranted, requesting that the court lift the stay.

//

The court DIRECTS the Clerk to strike Mr. Samson's pending motion for class certification (Dkt. ## 102 (redacted), 103 (sealed)).  If appropriate, Mr. Samson may refile his motion for class certification once the stay is lifted.  In light of the court's direction to strike the motion for class certification, the court also DIRECTS the Clerk to strike the parties' pending motions to seal as moot (see Dkt. ## 97, 119, 133, 144 (pending motions to seal)) and to designate all provisionally sealed documents (see Dkt. ## 93, 99, 100, 103, 121-127, 135 139, 144, and 146) as withdrawn from the record.  See Local Rules W.D. Wash. LCR 5(g)(6).

Dated this 14th day of July, 2020.

JAMES L. ROBART
United States District Judge