UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANTZ SAMSON, | CASE NO. 2:19-cv-00175 |
| Plaintiff, | ORDER LIFTING STAY |
| v. | |
| UNITED HEALTHCARE SERVICES INC., | |
| Defendant. | |

This matter is before the Court on the Parties' briefings as to whether or not to lift the current stay in this case. On September 1, 2022, the Court asked the Parties to file briefs on the status of the case and inform the Court whether the stay in the case should be lifted or remain. (See Dkt. No. 167.) Defendant filed a brief in favor of keeping the stay in place ("United Brief" (Dkt. No. 168)), while Plaintiff's brief requested the stay be lifted ("Samson Brief" (Dkt. No. 169)). After reviewing the briefs, the docket and all supporting materials, the Court LIFTS THE STAY.

**BACKGROUND**

Plaintiff Frantz Samson filed this suit against Defendant, United Healthcare Services ("United"), in 2019 alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b). Samson began receiving automated calls from United in 2018, asking Samson to call United regarding health insurance coverage. (Amended Complaint ¶¶ 5.1-5.4 (Dkt. No. 82).) Samson never provided prior consent to receive these calls, but appears to have inherited a phone number of someone whom United previously called. (Id. at ¶¶ 5.1, 5.11.) Samson tried blocking the number, calling United and asking to be taken off the list, and even attempting to "opt out" of the calls, but nevertheless continued to receive calls. (Id. at ¶¶ 5.5-5.7.) Samson brought this case as a class action on behalf of two classes: a "Wrong Number Class," consisting of individuals that United called but who were not United members at the time, and a "Do-Not-Call Class," comprising individuals that United called, but had flagged as "do not call" in its records. (Id. at ¶ 6.1.)

Shortly after Samson filed the Amended Complaint, United brought a motion to stay the case pending the resolution of three similar, consolidated cases in the Eastern District of California (Dkt. No. 75). The three cases are: Matlock v. United HealthCare Services, Inc. Case No. 2:13-cv-02206 (E.D. Cal.); Humphrey v. United HealthCare Services, Inc., Case No. 2:14-cv-01792 (E.D. Cal.); and Gonzalez v. Optum, Inc., Case No. 2:20-cv-01129 (E.D. Cal.). All three cases are class actions involving automatic calls by United or its subsidiary to individuals who did not consent to receiving calls. (Order Granting in Part and Denying in Part Motion to Stay at 3-5 (Dkt. No. 153).) The cases are currently stayed until the Federal Communications Commission ("FCC") clarifies the definition of a "called party" under the TCPA. This case was first assigned to the Honorable Judge Robart who ruled on the motion to stay. Judge Robart

granted the stay pending the resolution of the consolidated cases in July 2020. The case has since been reassigned to this Court. Given the time that has elapsed since Judge Robart granted the stay, the Court now considers whether a continued stay is appropriate or if it should be lifted.

**ANALYSIS**

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 683 (1997). "The same court that imposes a stay of litigation has the inherent power and discretion to lift the stay." Canady v. Erbe Elektromedizin GmbH, 271 F.Supp.2d 64, 74 (D.D.C. 2002). "When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay." Id. The Court finds that the circumstances in this case have changed since the stay was imposed that justify lifting it now.

Samson, in his brief, identified three reasons the Court should lift the stay: (1) new case law has come out since the stay was imposed, which change the circumstances; (2) assuming the Court would allow Samson to file an amended class certification, the classes could be limited to avoid any duplication with the Matlock actions; and (3) the Eastern District of California is unlikely to resolve this issue any time soon. The Court finds these reasons persuasive.

In support of his first argument, Samson points to the Ninth Circuit's decision in N.L. by Lemos v. Credit One Bank, N.A., 960 F.3d 1164 (9th Cir. 2020). The case seemingly decides the issue at the heart of how the FCC defines "called party." Under 47 U.S.C. § 227(b)(1)(A), it is unlawful to call a cell phone using any automatic telephone dialing system without the "prior express consent of the called party." The issue dealt with in Lemos, the same issue as the Matlock cases and this case, is whether a company can escape liability under the TCPA because the party it intended to call had given consent to be called, even though the party actually called

had not. Lemos, 960 F.3d at 1166.  The defendant in Lemos unsuccessfully tried to argue that the "intended recipient" of the call should be included in the definition of "called party." The Ninth Circuit upheld the district court's holding that a company that intended to call a customer, but in fact did not, did not render the recipient a "called party" and therefore did not exempt the company from liability under the TCPA. The Ninth Circuit panel also noted that this holding was consistent with every circuit that has addressed the issue. Id.

In contrast, United argues that the case should remain staying in light of the FCC's yet to be determined standard for interpreting "prior express consent of the called party." (United Brief at 3.) United points to the aftermath of ACA Int'l v. Fed. Commc'ns Comm'n, 885 F.3d 687 (D.C. Cir. 2018). In ACA Int'l, the D.C. Circuit reversed the FCC's framework for addressing liability for calls to reassigned numbers. Prior to this ruling, the FCC limited a caller's liability when the caller called a subscriber's number that had been reassigned to an individual who had not given prior express consent to be called. ACA Int'l, 885 F.3d at 707. This safe harbor provision was limited to one liability-free call. Id. at 706. The D.C. Circuit reversed this standard reasoning that the FCC adopted a reasonable reliance standard for callers who relied on the prior express consent of a called party, and the FCC failed to explain how a one liability-free call comported with that standard. Id. at 706-09. Since this ruling, the FCC has yet to determine a new standard for liability. United argues that in light of this, the case should remain stayed until the FCC articulates a new standard.

The Court finds that the holding in ACA Int'l and the FCC's yet to be determined standard is not incompatible with lifting the stay. The Ninth Circuit's decision in Lemos, made it the third circuit to rule on a company's liability for calling a party whose number had been reassigned. See Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242 (11th Cir. 2014); Soppet v.

1   Enhanced Recovery Co., 679 F.3d 637 (7th Cir. 2012). The D.C. and Third Circuits have also

2   voiced support for the Seventh and Eleventh Circuits' positions. See ACA Int'l v. FCC, 885 F.3d

3   687 (D.C. Cir. 2018); Leyse v. Bank of Am. Nat'l Ass'n, 804 F.3d 316 (3rd Cir. 2015). These

4   positions have all been the same – who a caller intended to call does not matter, the statutory text

5   discusses only the prior consent of the called party, not the intended recipient's consent. The

6   Ninth Circuit in Lemos, looked to the FCC's order, as well as the Seventh and Eleventh Circuit

7   opinions on the same issue, to find that callers have avenues for avoiding liability for calling

8   numbers that have since been reassigned. But that the statutory text of the TCPA most naturally

9   reflects that the caller cannot generally escape liability. This interpretation is compatible both

10  with the FCC's orders and the holding in ACA Int'l. This is exemplified by the fact that

11  following the decision in ACA Int'l, the FCC issued a new order in 2018 approving the creation

12  of a comprehensive reassigned number database and adopting a safe harbor for callers who rely

13  on it. See Second Report & Order, *In re Advanced Methods to Target & Eliminate Unlawful*

14  *Robocalls*, 33 FCC Rcd. 12024, 12043-45 (2018). The Court finds that Ninth Circuit's holding in

15  this matter creates a change of circumstance that warrants lifting the stay.

16          Turning to Samson's second argument, the Court finds that amending the classes further

17  warrants lifting the stay. Samson's proposed class amendments not only avoid duplicative

18  litigation, but the classes would fall into categories in which it is clear the caller did not have

19  prior express consent of the called party. Samson seeks leave to amend his class certification to

20  classes that are limited to (1) prerecorded voice calls only, and (2) calls placed by the same teams

21  that called Samson. Samson asserts that these amendments are designed to avoid any overlap

22  with the Matlock cases by including only individuals who received calls when United's own

23  records show that it knew it had either the wrong number or had been instructed not to call. The

24

Court finds these changes permissible. Not only would the amended class avoid overlap with the stayed cases, but it would also make any new order released by the FCC that include safe harbor provisions irrelevant.

Lastly, the Court finds it unlikely that the Eastern District of California will be able to resolve the Matlock cases in a timely manner. As of September 2022, the Eastern District of California has 5,744 pending civil cases and 2,088 pending criminal cases. Of the available judges, that is 1,566 pending cases per judge. The Eastern District of California has the highest pending caseload in the Ninth Circuit and priority is first given to criminal cases. Because of the change in circumstances and Samson's request to narrow the classes to ensure they do not overlap with the Matlock cases, the Court finds that waiting for the Eastern District would unnecessarily draw out Samson's case.

## CONCLUSION

The Court finds that Samson has demonstrated a change of circumstances that permit lifting the current stay. The Court therefore LIFTS THE STAY and gives Samson thirty (30) days to amend his Motion for Class Certification. The Court does so without prejudice to United to bring a motion to dismiss.

The clerk is ordered to provide copies of this order to all counsel.

Dated December 20, 2022.

Marsha J. Pechman
United States Senior District Judge