UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANTZ SAMSON, a Washington resident, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> UNITEDHEALTHCARE SERVICES, INC., <br><br> Defendant. | CASE NO. 2:19-cv-175 <br><br> ORDER ON DEFENDANT'S MOTION TO DISMISS UNDER THE FIRST-TO-FILE RULE |

This matter is before the Court on Defendant's Motion to Dismiss under the First-to-File Rule (Dkt. No. 181). Having reviewed the Motion, Plaintiff's Response (Dkt. No. 189); the Reply (Dkt. No. 219), and all other supporting materials and documents, the Court DENIES the Motion.

**BACKGROUND**

Plaintiff Frantz Samson filed this suit against Defendant, UnitedHealthcare Services ("United"), in 2019 alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47

U.S.C. § 227(b). Samson began receiving automated calls from United in July 2018 after getting a new cell phone number. (Renewed Mtn for Class Certification "Mtn for Class Cert" at 2 (Dkt. No. 179).) Samson repeatedly told United that it had the wrong number, asked United to stop calling and to take him of the calling list, but the calls persisted. (Id.) United is a large corporation comprised of "business segments," which in turn are composed of various teams. (Id. at 3.) Samson alleges that he received calls from three United teams: the Community & State National Retention team, the Medicare and Retirement Non-Licensed Retention team, and the Medicare and Retirement Collections team. (Id.) United utilizes the LiveVox IVR system and the Avaya Dialer to call and leave prerecorded messages to recipients. (Id. at 3-4.) Samson alleges that United violated the TCPA by placing calls using an artificial or prerecorded voice to cellular telephone numbers without the prior express consent of the party being called. (Id. at 4.) The case was brought as a class action on behalf of two classes: a "Wrong Number Class," consisting of individuals that United called but who were not United members at the time, and a "Do-Not-Call Class," comprising individuals that United called, but had flagged as "do not call" in its records. (Amended Complaint ¶ 6.1 (Dkt. No. 82).)

After Samson filed his Amended Complaint, United brought a motion to stay the case pending the resolution of three similar, consolidated cases in the Eastern District of California (Dkt. No. 75). The three cases are: Matlock v. United HealthCare Services, Inc. Case No. 2:13-cv-02206 (E.D. Cal.); Humphrey v. United HealthCare Services, Inc., Case No. 2:14-cv-01792 (E.D. Cal.); and Gonzalez v. Optum, Inc., Case No. 2:20-cv-01129 (E.D. Cal.). All three cases are class actions involving automatic calls by United or its subsidiary to individuals who did not consent to receiving calls. (Order Granting in Part and Denying in Part Motion to Stay at 3-5 (Dkt. No. 153).) The cases are currently stayed until the Federal Communications Commission

("FCC") clarifies the definition of "prior express consent of a called party" under the TCPA. This case was first assigned to the Honorable Judge Robart who ruled on the motion to stay. Judge Robart granted the stay pending the resolution of the consolidated cases in July 2020. The case has since been reassigned to this Court, who lifted the stay and gave Samson leave to file an Amended Class Certification to avoid any duplication with the classes in the Matlock actions. Samson has since filed a Renewed Motion for Class Certification. He again seeks to certify two classes:

> Wrong Number Class: All persons residing within the United States who, between January 1, 2015 and the date of class certification, received a non-emergency telephone call(s) from one of the UnitedHealthcare teams that called Plaintiff Samson, to a cellular phone through the use of an artificial or prerecorded voice, and who, according to Defendant's records, was not a UnitedHealthcare member at the time of the call.
>
> Do-Not-Call Class: All persons residing within the United States who, between January 1, 2015 and the date of class certification, received a non-emergency telephone call(s) from one of the UnitedHealthcare teams that called Plaintiff Samson, to a cellular phone through the use of an artificial or prerecorded voice, and whose telephone number, according to Defendant's records, was flagged or documented as "do not call," "final do not contact" or otherwise recorded as number not to be called.

(Mtn. for Class Cert. at 10.)

United now moves to dismiss under the first-to-file rule.

## ANALYSIS

Invoking the first-to-file rule, United asks the Court to decline jurisdiction and dismiss the action rather than stay or transfer it because Samson's newly proposed classes are completely subsumed by the proposed classes presented in the Matlock cases. The Court disagrees.

The first-to-file rule "permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). In determining

whether the first-to-file rule applies, courts analyze three factors: (1) chronology of the lawsuits, (2) similarity of the parties, and (3) similarity of the issues. Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc., 787 F.3d 1237, 1240 (9th Cir. 2015). If the rule applies, the district court may transfer, stay, or dismiss an action under these circumstances. Alltrade, Inc. v. Uniweld Prods., Inc, 946 F.2d 622, 623 (9th Cir. 1991). The first-to-file rule is intended to "serve[] the purpose of promoting efficiency well and should not be disregarded lightly." Id. at 625 (alteration in original). "When applying the first-to-file rule, courts should be driven to maximize economy, consistency, and comity." Kohn, 787 F.3d at 1240.

United argues that all three factors favor transfer. The first factor is not in dispute as all three Matlock cases predate Samson's case, however, the second and third factors are disputed by the parties. United contends that Samson's proposed classes are entirely subsumed by the classes by the classes in the Matlock cases, and that the issues in all the cases are substantially similar. The Court is not persuaded by this argument.

First, the classes in Matlock and Gonzalez do not encompass Samson's proposed classes. The proposed class in Matlock is limited to individuals who received autodialed or prerecorded calls from United from October 2009 to October 2013. (Response at 9-10.) In contrast, the class period in this case commences on January 1, 2015. If the Court were to dismiss this case, Matlock would not adequately represent the class proposed here because the class periods are different. And the proposed class in Gonzalez is limited to individuals who received prerecorded calls from Optum, a separate company from United, regarding their "HouseCalls" program. Samson claims that Optum uses a different dialer than the dialers used to place prerecorded calls to him and that Optum is not the same entity as United, therefore calls placed by Optum are not part of his suit. (Id. at 10.)

1         In contrast, United argues that Samson's proposed classes do in fact include calls from
2   Optum because Samson received Optum HouseCalls calls, and he defines the classes to include
3   teams who called him regardless of whether they called using prerecorded messages. (Reply at
4   10.) But Samson denies the Optum calls are part of the class, which is supported by the renewed
5   motion for class certification. In the motion, Samson specifies which three United teams he
6   received calls from, none of which are the HouseCalls or Optum. (Mtn. for Class Cert. at 3.)
7   Samson also details which dialers are at issue in his case. (Id. at 3-5.) Though the Court
8   acknowledges these specifics are technically absent from Samson's proposed class definitions,
9   Samson makes clear through the motion the confines of which he's seeking to litigate. And the
10  Court finds the precise class definitions to be certified are more appropriately dealt with in any
11  order on class certification. See Fed.R.Civ.P. 23(c)(1)(B) (in a class action, the class is defined
12  by the order granting certification). There is no rule that the definition of a certified class must
13  exactly match the definition contained in the complaint. Id. Should it be necessary to change the
14  class definitions to include these specifics, the Court has the discretion to modify them. See
15  Rosas v. Sarbanand Farms, LLC, 329 F.R.D. 671, 693 (W.D. Wash. 2018) (citing Armstrong v.
16  Davis, 275 F.3d 849, 872 (9th Cir. 2001) ("The Court has discretion to modify class definitions
17  where appropriate.").

18        Second, United argues that Samson's definitions overlap with Humphrey. But Humphrey
19  does not actually propose any class definitions. Rather, the Humphrey complaint states that
20  "[p]laintiff seeks to represent a class of consumers who was [sic] called by United Healthcare
21  using an artificial or pre-recorded voice without the consent of the called party" and that he will
22  propose a precise class definition in his final class certification motion. (Declaration of Maxwell
23  Pritt, Exhibit B at 4-5 (Dkt. No. 182-2).) Samson argues that his proposed classes would not fall
24

into Humphrey's yet to be determined classes because consent is not an issue. The Court agrees. Samson's proposed classes are for those whose United's records demonstrate were not customers at the time of the call or whose numbers had been flagged as do not call. These definitions are based on the premise that United did not have consent to call when the teams did. For these reasons, the Court finds the parties are not substantially similar enough to warrant dismissal.

Lastly, in the same vein, the issues are not the same because all of the Matlock cases are currently stayed as the issue at the heart of the complaints is the interpretation of "prior express consent of the called party." As explained above, based on Samson's proposed classes, prior express consent is not at issue in this case. And should it become an issue, the Court previously found in its Order Lifting the Stay, that the Ninth Circuit's holding in N.L. by Lemos v. Credit One Bank, N.A., 960 F.3d 1164 (9th Cir. 2020) determines how district courts in this circuit should interpret the phrase, making any future FCC ruling irrelevant. (See Order Lifting Stay at 3-5 (Dkt. No. 171).) However, the proposed classes, as currently defined, do not make consent an issue to be litigated in this case, unlike the Matlock cases.

Because both the parties and the issues to be litigated in this case are different than those in the Matlock cases, the Court DENIES United's Motion to Dismiss under the First-to-File rule.

The clerk is ordered to provide copies of this order to all counsel.

Dated April 13, 2023.

Marsha J. Pechman
United States Senior District Judge