THE HONORABLE MARSHA J. PECHMAN

1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

7   FRANTZ SAMSON, a Washington resident,
    individually and on behalf of all others similarly
8   situated,

9                          Plaintiff,

10         v.

11  UNITEDHEALTHCARE SERVICES, INC.,

12                         Defendant.

13

14

Case No. 2:19-cv-00175-MJP

**PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES, COSTS, AND
SERVICE AWARD**

**NOTED FOR HEARING:**
JUNE 20, 2025

15

16

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF CONTENTS

PAGE

I.  INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND ............................................................................................................ 2

    A.  Samson and Class Counsel dedicated substantial time and resources to this case ...................................................................................................... 2

    B.  Class Counsel negotiated an excellent settlement for the Settlement Class ................................................................................................................ 4

III.  ARGUMENT ................................................................................................................. 4

    A.  A fee award of one third of the Settlement Fund is reasonable and appropriate .............................................................................................. 4

    B.  An upward adjustment of the 25% benchmark is appropriate .............................. 5

        1.  Class Counsel achieved an excellent settlement for the Settlement Class ........................................................................................ 5

        2.  The settlement is particularly favorable given the risks of continued litigation ............................................................................... 6

        3.  Class Counsel demonstrated skill and experience with high-quality work ................................................................................. 7

        4.  Class Counsel assumed significant risk of no recovery ............................. 7

        5.  Fee awards in similar cases support the request ........................................ 8

        6.  A lodestar crosscheck supports the request ............................................... 9

    C.  Class Counsel's litigation costs should be reimbursed ....................................... 11

    D.  A $20,000 service award is appropriate ............................................................. 11

IV.  CONCLUSION ............................................................................................................ 12

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - i
Case No. 2:19-cv-00175-MJP

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## TABLE OF AUTHORITIES

**PAGE(S)**

### FEDERAL CASES

*Allstate Indem. Co. v. Lindquist*,
   2021 WL 4226155 (W.D. Wash. Sept. 16, 2021)..........................................10

*Alvarez v. Farmers Ins. Exch.*,
   2017 WL 2214585 (N.D. Cal. Jan. 18, 2017)............................................5, 8

*Amazon.com v. Wong*,
   2022 WL 1092518 (W.D. Wash. Apr. 12, 2022)....................................10

*Arthur v. Sallie Mae, Inc.*,
   2012 WL 4075238 (W.D. Wash. Sept. 17, 2012)...................................6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..............................................................4

*Brazile v. Comm'r of Soc. Sec.*,
   2022 WL 503779 (W.D. Wash. Feb. 18, 2022)........................................10

*Carlin v. DairyAmerica*,
   380 F. Supp. 3d 998 (E.D. Cal. 2019)...............................................6

*Couser v. Comenity Bank*,
   125 F. Supp. 3d 1034 (S.D. Cal. 2015)..............................................6

*Craft v. County of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................5

*Destefano v. Zynga*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......................................7, 8

*DiMercurio v. Equilon Enterprises*,
   2024 WL 2113857 (N.D. Cal. May 9, 2024)........................................8, 9

*Estrada v. iYogi*,
   2015 WL 5895942 (E.D. Cal. Oct. 6, 2015).........................................6

*Farrell v. Bank of America*,
   827 F. App'x 628 (9th Cir. 2020) ..................................................9

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - ii
Case No. 2:19-cv-00175-MJP

1   *Franklin v. Wells Fargo Bank, N.A.,*
2       2016 WL 402249 (S.D. Cal. Jan. 29, 2016).....................................................................6

3   *Garner v. State Farm Mut. Auto. Ins.,*
        2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................................12

4   *Gonzalez v. City of Maywood,*
5       729 F.3d 1196 (9th Cir. 2013) ...............................................................................9, 10

6   *Grey Fox v. Plains All-Am. Pipeline,*
        2024 WL 4267431 (C.D. Cal. Sept. 17, 2024) ....................................................11, 12
7
8   *Hallman v. Wells Fargo Bank,*
        2021 WL 9567171 (W.D. Wash. June 10, 2021)...........................................................9

9   *In re Bluetooth Headset Prods. Liab. Litig.,*
10      654 F.3d 935 (9th Cir. 2011) .................................................................................5, 9

11  *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
        109 F.3d 602 (9th Cir. 1997) ......................................................................................5
12
13  *In re High-Tech Emp. Antitrust Litig.,*
        2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) .............................................................11
14
    *In re Nat'l Collegiate Athletic Ass'n,*
15      2017 WL 6040065 (N.D. Cal. Dec. 6, 2017)..............................................................12

16  *In re Omnivision Techs.,*
17      559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008)............................................................7

18  *In re Online DVD-Rental Antitrust Litig.,*
        779 F.3d 934 (9th Cir. 2015) .......................................................................................7
19
20  *Ingram v. Oroudjian,*
        647 F.3d 925 (9th Cir. 2011) .....................................................................................10

21  *Jenson v. First Tr. Corp.,*
22      2008 WL 11338161 (C.D. Cal. June 9, 2008) ..............................................................7

23  *Knudsen v. Hightower Holdings,*
        2024 WL 3430994 (W.D. Wash. July 16, 2024) ........................................................10
24
25  *Koonwaiyou v. Blinken,*
        2024 WL 1193111 (W.D. Wash. Mar. 20, 2024) .......................................................10
26
27

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - iii
Case No. 2:19-cv-00175-MJP

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Lofton v. Verizon Wireless*,
  2016 WL 7985253 (N.D. Cal. May 27, 2016) ...............................................7

*Lowery v. Rhapsody Int'l*,
  75 F.4th 985 (9th Cir. 2023) .........................................................5

*Nat'l Rural Telecommc'ns Coop. v. DirecTV*,
  221 F.R.D. 523 (C.D. Cal. 2004) ....................................................6

*Promedev v. Wilson*,
  2024 WL 3043415 (W.D. Wash. June 18, 2024)...................................10

*Randall v. Integrated Commc'n Servs.*,
  No.3:20-cv-05438-DGE (W.D. Wash. Mar. 29, 2024) ...........................8, 10

*Rabin v. PricewaterhouseCoopers*,
  2021 WL 837626 (N.D. Cal. Feb. 4, 2021) .......................................8

*Reed v. Balfour Beatty Rail*,
  2023 WL 4680922 (C.D. Cal. June 22, 2023) ....................................9

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
  2016 WL 3087073 (W.D. Wash. May 31, 2016).................................6

*Rivas v. BG Retail*,
  2020 WL 264401 (N.D. Cal. Jan 16, 2020) ...................................10

*Rodriguez v. W. Publishing*,
  563 F.3d 948, 958-59 (9th Cir. 2009) .......................................11

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
  2024 WL 1676754 (W.D. Wash. Apr. 18, 2024)...........................8, 10

*Scott v. Blackstone Consulting*,
  2024 WL 271439 (S.D. Cal. Jan. 24, 2024)..................................8

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ...........................................5

*Soto v. O.C. Commc'ns*,
  2019 WL 13151723 (N.D. Cal. Oct. 23, 2019)..............................9

*Stedman v. Progressive Ins.*,
  2024 WL 248094 (W.D. Wash. Jan. 23, 2024)...........................10

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Suarez v. Bank of America*,
    2024 WL 150721 (N.D. Cal. Jan. 11, 2024) ...................................................................8

*Vincent v. Hughes Air W.*,
    557 F.2d 759 (9th Cir. 1977) ....................................................................................11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..........................................................................4, 5, 6, 9

*Welch v. Metro. Life Ins.*,
    480 F.3d 942 (9th Cir. 2007) ....................................................................................10

*Zamora v. Lyft*,
    2018 WL 4657308 (N.D. Cal. Sept. 26, 2018) ............................................................8

**FEDERAL RULES**

Fed. R. Civ. P. 23(h) ...........................................................................................................11

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - v
Case No. 2:19-cv-00175-MJP

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## I.    INTRODUCTION

2     This TCPA class action settled three months before the parties were scheduled to go to

3  trial. The litigation was fierce. Although the parties engaged in mediation three times earlier in

4  the case, settlement negotiations were not productive. Instead, United lodged an aggressive

5  defense. Samson and Class Counsel responded to nine sets of discovery requests; reviewed over

6  120,000 pages of documents, including tens of thousands of call recordings United produced

7  after the classes were certified; took eleven depositions of United employees and expert; and

8  hired two experts, who together produced five reports, three declarations, and sat for depositions.

9  The parties together briefed eight pre-trial motions, including two class certification motions.

10  When the parties settled, United's motions to decertify the class and to exclude Samson's experts

11  were nearly fully briefed and the parties were preparing to brief dispositive motions and for trial.

12     The non-reversionary settlement provides significant cash awards for Settlement Class

13  Members that, depending on the claims rate, will pay claimants a substantial portion (if not all)

14  of the statutory damages they would receive had the case proceeded to trial. To compensate them

15  for their efforts, Class Counsel request a fee award of 33.33% of the $2.5 million Settlement

16  Fund, or $833,333, which recognizes the excellent result they obtained for the Settlement Class

17  given the risks they faced at trial and their high-quality work. This amount is 24% of their

18  $3,533,234.50 total lodestar.

19     Class Counsel also respectfully request reimbursement of $417,003 in litigation costs,

20  and that the Court approve a service award to Plaintiff in the amount of $20,000 for his work on

21  behalf of the Settlement Class. Samson has actively participated in this action since its inception

22  six years ago. He responded to written discovery requests, assisted in counsel's investigation, sat

23  for deposition, attended mediation, and was ready to testify at trial. A service award of $20,000

24  for his efforts is reasonable and appropriate.

25

26

27

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - 1
Case No. 2:19-cv-00175-MJP

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## II.    BACKGROUND

2

**A.    Samson and Class Counsel dedicated substantial time and resources to this case.**

3    Samson filed this case in January 2019, alleging that United violated the TCPA by

4    placing non-emergency prerecorded calls without prior express consent. Dkt. 1.

5    United's intent to vigorously defend against these claims was evident when, two weeks

6    after answering the complaint, United moved for a stay until the FCC weighed in on the meaning

7    of the term "autodialer" and whether a company violates the TCPA when it calls a reassigned

8    number relying on consent from the number's prior owner. Dkt. 34, 35. The Court denied the

9    motion, agreeing with Samson that neither issue was a matter of first impression or outside the

10    court's competence to decide. Dkt. 41.

11    Discovery was hard fought. Samson served six sets of discovery requests and responded

12    to nine. Murray Fee Decl. ¶9. Obtaining necessary discovery from United required numerous

13    meet and confers. Ultimately, United produced over 120,000 pages of documents, including over

14    1,000 from its expert, 117,000 call recordings, and hundreds of data files. *Id.* ¶10. Samson was

15    deposed by United and took 10 depositions of United employees. *Id.* ¶11. Samson's two experts

16    produced five reports and three declarations and were deposed by United. United's two experts

17    produced two reports and two declarations and Samson deposed them. *Id.* ¶13.

18    In 2020, the parties mediated twice with experienced class action mediator Lou Peterson,

19    but did not resolve the case. Dkt. 72.

20    In April 2020, United filed a second motion to stay based on the Supreme Court's

21    anticipated determination of the constitutionality of the TCPA's cell phone restriction, arguing

22    that, alternatively, the Court should dismiss, transfer or stay the case under the first-to-file rule.

23    Dkt. 75. While that motion was pending, Samson moved for class certification. Dkt. 94-100,

24    130-139. United opposed and filed a sur-reply. Dkt. 112-127, 143.

25    In July 2020, the Court granted United's motion to stay under the first-to-file doctrine

26    pending resolution of cases filed in the Eastern District of California. Dkt. 153.

27

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - 2
Case No. 2:19-cv-00175-MJP

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    In September 2022, the case was reassigned and this Court ordered the parties brief

2    whether the stay should remain in place and then agreed with Samson that the stay should be

3    lifted. Dkt. 166-171.

4    Samson filed a renewed motion for class certification. Dkt. 172-178. United countered

5    with a renewed motion to dismiss under the first-to-file rule, which Samson opposed and the

6    Court denied. Dkt. 181-182, 189, 239. After the motion was fully briefed, the parties held a third

7    mediation with Mr. Peterson and again the case did not settle. Dkt. 259. The Court then granted

8    the class certification motion after a lengthy hearing, certifying Wrong Number and DNC

9    Classes. Dkt. 191-218, 226-230, 234, 261, 266. United filed a Rule 23(f) petition asking the

10   Ninth Circuit for permission to appeal the class certification order, which Samson opposed and

11   the Ninth Circuit denied. Dkt. 282.

12   The parties filed a joint submission regarding the notice plan, in which Samson proposed

13   to subpoena wireless carriers to identify subscribers of numbers on the class list, use a reverse

14   lookup process to identify class members, and send direct notice supplemented with targeted

15   online ads; United argued the class list was overbroad and proposed a schedule for briefing

16   disputes. Dkt. 272-273. Soon after, United moved to dismiss the claims of non-Washington class

17   members for lack of personal jurisdiction, which Samson successfully opposed. Dkt. 277, 278,

18   294-295.

19   Samson served subpoenas on wireless providers, moving to enforce them as needed. *See*,

20   *e.g.*, Dkt. 288, 293, 299. The parties continued to dispute the process and plan for notifying class

21   members of the Court's certification order, but agreed to certain discovery. *See*, *e.g.*, Dkt. 302,

22   305. Among other things, United produced tens of thousands of call recordings and identified

23   new potential trial witnesses, and Samson deposed those witnesses and two additional United

24   employees. Dkt. 331 ¶¶ 2-3. Samson's expert analyzed the data from the wireless carriers, the

25   reverse lookup results, and United's post-certification productions to compile a list of potential

26   class members for notice. *Id.* ¶¶ 4-7.

27

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - 3
Case No. 2:19-cv-00175-MJP

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    United moved to decertify the Classes based largely on call recordings it produced after

2    the certification order. Dkt. 311. After reviewing the call recordings Samson agreed that the

3    DNC Class should be decertified but opposed decertification of the Wrong Number Class and

4    produced an updated list of its potential members. Dkt. 330-333.

5    The parties then re-opened settlement discussions again with the assistance of Mr.

6    Peterson. After several weeks the parties negotiated the proposed settlement.

7    **B.    Class Counsel negotiated an excellent settlement for the Settlement Class.**

8    United will pay $2.5 million to resolve class members' claims. The non-reversionary

9    Settlement Fund will pay Court-approved attorneys' fees and costs, a service award to Samson,

10    and settlement administration costs. If the requested amounts are approved, the balance—

11    approximately $1,194,664—will be paid to class members who submit valid claims.

12    There are 12,012 telephone numbers on the class list. The net fund is sufficient to pay

13    every class member an award of over $99. Class Counsel do not expect every class member to

14    make a claim. If 10% of the class submit claims, the estimated payment will be over $994

15    ($1,194,664/12,01 = $994.72).

16    **III.    ARGUMENT**

17    **A.    A fee award of one third of the Settlement Fund is reasonable and appropriate.**

18    "[A] lawyer who recovers a common fund for the benefit of persons other than himself or

19    his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van*

20    *Gemert*, 444 U.S. 472, 478 (1980). The "common fund" doctrine "rests on the perception that

21    persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched

22    at the successful litigant's expense." *Id.* The court can "prevent this inequity by assessing

23    attorney's fees against the entire fund, thus spreading fees proportionally among those benefited

24    by the suit." *Id.*

25    Courts may award fees from a common fund using the percentage-of-the-fund or the

26    lodestar method. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002).

27    "Reasonableness is the goal, and mechanical or formulaic application of either method, where it

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - 4
Case No. 2:19-cv-00175-MJP

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   yields an unreasonable result, can be an abuse of discretion." *In re Coordinated Pretrial*

2   *Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

3        The percentage-of-the-fund method is appropriate for determining a reasonable fee in this

4   case. Courts use this method when, as here, the benefit to the class is easily quantified. *In re*

5   *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

6   **B.**     **An upward adjustment of the 25% benchmark is appropriate.**

7        The Ninth Circuit instructs that "[t]he 25% benchmark, although a starting point for

8   analysis, may be inappropriate in some cases." *Vizcaino*, 290 F.3d at 1047. The "benchmark

9   percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances

10  indicate that the percentage recovery would be either too small or too large in light of the hours

11  devoted to the case or other relevant factors." *Six Mexican Workers v. Ariz. Citrus Growers*, 904

12  F.2d 1301, 1311 (9th Cir. 1990). The Ninth Circuit has identified relevant factors for determining

13  whether the requested fee is reasonable under the "circumstances of the case": (1) the results

14  achieved; (2) the risk of continued litigation; (3) the skill required and quality of work; (4) the

15  contingent nature of the fee and financial burden carried by the plaintiff; and (5) awards in

16  similar cases. *Vizcaino*, 290 F.3d at 1048-50. Courts may also consider a lodestar cross-check.

17  *Id.* at 1050.

18       These factors support the requested fee. Moreover, courts recognize a settlement fund

19  under $10 million will "often result in fees above 25%." *Craft v. County of San Bernardino*, 624

20  F. Supp. 2d 1113, 1127 (C.D. Cal. 2008); *see also Alvarez v. Farmers Ins. Exch.*, 2017 WL

21  2214585, at *3 (N.D. Cal. Jan. 18, 2017) (citing cases). This is not a "mega fund" case that

22  would result in a windfall for Class Counsel. *Bluetooth*, 654 F.3d at 942.

23       1.    Class Counsel achieved an excellent settlement for the Settlement Class.

24       "The touchstone for determining the reasonableness of attorneys' fees in a class action is

25  the benefit to the class." *Lowery v. Rhapsody Int'l*, 75 F.4th 985, 988 (9th Cir. 2023). Class

26  Counsel negotiated a settlement that will significantly benefit the class. The estimated payments

27  of $350 to $1,000 far exceed similar settlements approved by other courts, including many in this

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - 5
Case No. 2:19-cv-00175-MJP

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

circuit. *See Rinky Dink, Inc. v. World Bus. Lenders, LLC*, 2016 WL 3087073, at *3 (W.D. Wash. May 31, 2016) (approving $150-per-claimant settlement); *Franklin v. Wells Fargo Bank, N.A.,* 2016 WL 402249, at *3 (S.D. Cal. Jan. 29, 2016) ($71.16 per claimant); *Estrada v. iYogi*, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) ($40); *Couser v. Comenity Bank,* 125 F. Supp. 3d 1034, 1043 (S.D. Cal. 2015) (approximately $13.75 per claimant); *Arthur v. Sallie Mae, Inc.*, 2012 WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012) (approximately $100 per claimant).

The estimated payments represent a substantial portion of class members' maximum recovery of $500 to $1,500 per call if they prevailed at trial. 47 U.S.C. § 227(b)(3); *see also Carlin v. DairyAmerica*, 380 F. Supp. 3d 998, 1022 (E.D. Cal. 2019) (awarding fee of one-third of settlement fund due in part to "the highly favorable terms for class members"—48% of estimated damages—and citing cases with recoveries of 32-35% of damages and similar fees).

2.   <u>The settlement is particularly favorable given the risks of continued litigation.</u>

"Risk is a relevant circumstance." *Carlin*, 380 F. Supp. 3d at 1020 (citing *Vizcaino*, 290 F.3d at 1048). The $2.5 million Settlement Fund reflects the risks Samson faces in overcoming United's contention that it is impossible to determine on a class wide basis whether United called wrong numbers. United produced thousands of call recordings that it said showed conclusively that its electronic records could not be relied on. Samson's expert anticipated this argument and devised a methodology that relied on multiple sources of data, but United moved to exclude her analysis and to decertify the class. United also contended that exceptions to the TCPA absolved United of any liability. Dkt. 266. Samson faced risk that, even if the Court denied the motions to decertify and to exclude his expert, he would eventually lose on the merits.

Samson acknowledges the risk of trial and appeals, which could delay any benefit to the class for years. That is especially true because TCPA jurisprudence continues to evolve and United has a history of dedicating substantial resources to trying to convince regulators and courts to carve out exceptions for its calls. Courts recognize that it may be "proper to take the bird in hand instead of a prospective flock in the bush." *Nat'l Rural Telecommc'ns Coop. v. DirecTV,* 221 F.R.D. 523, 526 (C.D. Cal. 2004).

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - 6
Case No. 2:19-cv-00175-MJP

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1           3.   <u>Class Counsel demonstrated skill and experience with high-quality work.</u>

2           "The 'prosecution and management of a complex national class action requires unique

3  legal skills and abilities.'" *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. Jan.

4  9, 2008) (citation omitted). Class Counsel litigated this case efficiently because of their

5  experience successfully prosecuting dozens of TCPA class actions. Murray ¶¶16-30, Exs. 2-3.

6  Class Counsel knew to quickly secure calling records, and served early targeted discovery on

7  United to focus on key disputed issues. *Id.* ¶9. Class Counsel took several early depositions

8  focused on United's policies and procedures. These depositions provided invaluable insight into

9  United's business practices that Samson used in support of class certification. *Id.*

10          Class Counsel achieved this relief despite the vigorous opposition of proficient defense

11  counsel, who aggressively filed multiple motions on a variety of topics. *Destefano v. Zynga*,

12  2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("The quality of opposing counsel is also

13  relevant to the quality and skill that class counsel provided."); *Lofton v. Verizon Wireless*, 2016

14  WL 7985253, at *1 (N.D. Cal. May 27, 2016) (the "risks of class litigation against an able

15  defendant well able to defend itself vigorously" support upward adjustment).

16          4.   <u>Class Counsel assumed significant risk of no recovery.</u>

17          Class Counsel's fee request reflects that they litigated this case on a contingency basis

18  and risked recovering no fees. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55

19  (9th Cir. 2015); *Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *12 (C.D. Cal. June 9, 2008)

20  ("Uncertainty that any recovery ultimately would be obtained is a highly relevant consideration.

21  Indeed, the risks assumed by Counsel, particularly the risk of non-payment or reimbursement of

22  expenses, is important to determining a proper fee award.").

23          Class Counsel assumed significant burdens in pursuing this case on a contingent basis.

24  For example, Class Counsel advanced costs for expert reports in 2020 and shouldered that

25  expense ever since. Class Counsel also turned down other opportunities to effectively manage

26  this case. Murray ¶31, Exs. 2-3. "With respect to the contingent nature of the litigation … courts

27

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - 7
Case No. 2:19-cv-00175-MJP

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  tend to find above-market-value fee awards more appropriate in this context given the need to

2  encourage counsel to take on contingency-fee cases for plaintiffs who otherwise could not afford

3  to pay hourly fees." *Destefano*, 2016 WL 537946, at *18. "This is especially true where, as here,

4  class counsel has significant experience in the particular type of litigation at issue; indeed, in

5  such contexts, courts have awarded an even higher 33 percent fee award." *Id.*; *see also Rabin v.*

6  *PricewaterhouseCoopers*, 2021 WL 837626, at *8 (N.D. Cal. Feb. 4, 2021) (noting "the

7  attorney's fee award should take into account the risk of representing Plaintiffs on a contingency

8  basis over a period of four years of litigation" and awarding fee of 35% of settlement fund).

9         5.    <u>Fee awards in similar cases support the request.</u>

10        Courts in this circuit have observed that "fee awards of approximately 33⅓% are typical

11  for settlements up to $10 million." *Zamora v. Lyft*, 2018 WL 4657308, at *3 (N.D. Cal. Sept. 26,

12  2018); *see also Alvarez*, 2017 WL 2214585, at *3 (citing cases). Courts also adjust the

13  benchmark upward where, as here, the settlement is a favorable result for the class and class

14  counsel made a significant investment of time and resources, resulting in a lodestar that is less

15  than the requested fee. *See Schmitt v. Kaiser Found. Health Plan of Wash.*, 2024 WL 1676754, at

16  *4-5 (W.D. Wash. Apr. 18, 2024) (awarding one third of settlement fund that "provides a

17  substantial monetary benefit for the Class" where "counsel undertook a significant risk in

18  bringing this class action lawsuit on a contingent basis" since it was complex and "heavily

19  litigated" for several years); *DiMercurio v. Equilon Enterprises*, 2024 WL 2113857, at *9 (N.D.

20  Cal. May 9, 2024) (awarding one-third of settlement fund under $10 million where counsel

21  "achieved substantial results"); *Randall v. Integrated Commc'n Servs.*, No.3:20-cv-05438-DGE,

22  Dkt.136 (W.D. Wash. Mar. 29, 2024) (awarding one third of settlement fund); *Mannacio v.*

23  *Sovereign Lending Group*, No.3:22-cv-05498-TMC, Dkt.77 (W.D. Wash. Mar. 1, 2024)

24  (awarding one third of settlement fund in TCPA case); *Scott v. Blackstone Consulting*, 2024 WL

25  271439, at *11 (S.D. Cal. Jan. 24, 2024) (awarding one third of settlement amount); *Suarez v.*

26  *Bank of America*, 2024 WL 150721, at *3 (N.D. Cal. Jan. 11, 2024) (awarding one third of

27  settlement fund because "[c]ounsel obtained excellent benefits for the class despite a vigorous

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - 8
Case No. 2:19-cv-00175-MJP

and skillful defense" and risks of litigation); *Reed v. Balfour Beatty Rail*, 2023 WL 4680922, at

*7 (C.D. Cal. June 22, 2023) (awarding 33% of settlement fund, citing "superior result,"

counsel's experience, and contingent nature of fee); *Soto v. O.C. Commc'ns*, 2019 WL

13151723, at *3 (N.D. Cal. Oct. 23, 2019) (approving fee award of one-third of $7.5 million

settlement fund); *see also Hallman v. Wells Fargo Bank*, 2021 WL 9567171, at *2 (W.D. Wash.

June 10, 2021) ("The fee award, which is one-third of the Gross Fund Value, is reasonable under

both the percentage-of-the-fund method and a lodestar cross-check, particularly in light of the

substantial time and resources Class Counsel devoted to this risky multi-year litigation on a

contingency basis, and in light of the extraordinary results obtained through the Settlement.").

> 6.    A lodestar crosscheck supports the request.

While not required, a lodestar crosscheck supports the requested fee. *See Farrell v. Bank*

*of America*, 827 F. App'x 628, 630 (9th Cir. 2020) ("This Court has consistently refused to adopt

a crosscheck requirement, and we do so once more."); *Vizcaino*, 290 F.3d at 1050 & n.5 (when

the "primary basis of the fee award remains the percentage method," a lodestar analysis "may"

be useful but is "merely a cross check"). Courts first calculate the lodestar by multiplying the

number of hours reasonably expended by a reasonable rate, and then consider adjusting the

lodestar to account for several factors, such as the benefit obtained for the class, risk of

nonpayment, complexity and novelty of the issues presented, and awards in similar cases.

*Bluetooth*, 654 F.3d at 941-42.

Class Counsel's combined lodestar of $3,533,234.50—which, as discussed below, is

based on reasonable rates and a reasonable number of hours—represents a "negative" multiplier

of approximately 0.24. "A negative multiple strongly suggests the reasonableness of a negotiated

fee." *DiMercurio*, 2024 WL 2113857, at *10.

> a.    Class Counsel's hourly rates are reasonable.

In determining a reasonable hourly rate, courts look to the prevailing market rates in the

forum in which the district court sits. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th

Cir. 2013). Class Counsel calculated their lodestar at rates of $745-$1050 for attorneys with at

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - 9
Case No. 2:19-cv-00175-MJP

1   least 25 years of experience, $600-$725 for attorneys with at least 15 years of experience, and

2   $250-$500 for contract and less-experienced attorneys. Murray ¶34 & Exs. 1-3. These rates are

3   "reasonable and comparable to the fees generally charged by attorneys with similar experience,

4   ability, and reputation for work on similar matters in this judicial district." *Rivas v. BG Retail*,

5   2020 WL 264401 (N.D. Cal. Jan 16, 2020); *see also Knudsen v. Hightower Holdings*, 2024 WL

6   3430994, at *3 (W.D. Wash. July 16, 2024) ($450 to $850 reasonable for Seattle); *Promedev v.

7   Wilson*, 2024 WL 3043415, at *6 (W.D. Wash. June 18, 2024) ($850 reasonable for Seattle

8   partner); *Koonwaiyou v. Blinken*, 2024 WL 1193111, at *9 (W.D. Wash. Mar. 20, 2024)

9   (approving $850 rate for experienced Seattle lawyer); *Schmitt*, 2024 WL 1676754, at *5

10  (approving rates from $695 to $750 as set forth in Dkt.176 ¶3); *Randall v. Integrated Commc'n

11  Servs.*, No. 3:20-cv-05438-DGE, Dkt.135 (W.D. Wash. Mar. 29, 2024) (awarding one-third of

12  settlement fund where lodestar cross-check based on rates from $680 to $1295 as set forth in

13  Dkt.121-1); *Stedman v. Progressive Ins.*, 2024 WL 248094, at *1 (W.D. Wash. Jan. 23, 2024)

14  (awarding one third of settlement fund after approving rates from $120 to $850 for staff and

15  attorneys, as set forth in Dkt.131 at 14); *Amazon.com v. Wong*, 2022 WL 1092518, at *2 (W.D.

16  Wash. Apr. 12, 2022) (approving rates "from $535 to $785 for attorneys and $215 for

17  paralegals"); *Brazile v. Comm'r of Soc. Sec.*, 2022 WL 503779, at *3 (W.D. Wash. Feb. 18,

18  2022) (noting "fee awards with hourly rates exceeding $1,000 have been approved by courts in

19  this district on numerous occasions," and citing cases); *Allstate Indem. Co. v. Lindquist*, 2021

20  WL 4226155, at *3 (W.D. Wash. Sept. 16, 2021) (approving $300 for legal assistants).

21      Class Counsel's declarations describe the basis for their hourly rates, including their

22  education, experience, and reputation in the legal community. Courts have found these rates to

23  be reasonable. Murray ¶36; *see also Welch v. Metro. Life Ins.*, 480 F.3d 942, 947 (9th Cir. 2007)

24  (affidavits from plaintiffs' counsel and fee awards in other cases sufficient evidence of prevailing

25  market rates); *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (courts may rely on their

26  familiarity with the legal market in determining reasonable hourly rates).

27

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - 10
Case No. 2:19-cv-00175-MJP

1    The requested award of $833,333 divided by the over 6,140 hours worked results in an

2    effective hourly rate of $135.72 for all work done. This is far below the rates ordinarily charged

3    by Class Counsel and other attorneys of comparable skill in the community.

4              b.    *Class Counsel spent a reasonable number of hours litigating the case.*

5    This case spanned nearly six years and required substantial effort, particularly given the

6    tenacious defense by United's counsel. Obtaining calling records, deposing key witnesses,

7    multiple rounds of class certification briefing, and reviewing tens of thousands of belatedly-

8    produced call recordings were particularly intensive aspects of this case. In all, Class Counsel

9    dedicated 6,140.2 hours to the case. This total excludes time Class Counsel removed as

10   administrative or arguably inefficient or duplicative. Class Counsel will spend additional hours

11   seeing the case through to final resolution, including moving for final approval, attending the

12   hearing, and ensuring the claims process is properly carried out.

13   **C.    Class Counsel's litigation costs should be reimbursed.**

14   Attorneys who create a common fund are entitled to reimbursement of their out-of-pocket

15   expenses so long as they are reasonable, necessary and directly related to the work performed for

16   the class. *Vincent v. Hughes Air W.*, 557 F.2d 759, 769 (9th Cir. 1977); *In re High-Tech Emp.*

17   *Antitrust Litig.*, 2015 WL 5158730, at *16 (N.D. Cal. Sept. 2, 2015) (awarding costs for expert

18   witness fees, mediation fees, document management and review, court reporting and

19   videographer, electronic research, copying, mailing, and serving documents, and travel); *see also*

20   Fed. R. Civ. P. 23(h). Class Counsel's declarations provide their litigation costs by category,

21   including over $302,000 for expert work essential to proving United's liability and identifying

22   class members, totaling $417,033. Murray ¶37 & Exs. 2-3.

23   **D.    A $20,000 service award is appropriate.**

24   Service awards " are fairly typical in class action cases." *Rodriguez v. W. Publishing*, 563

25   F.3d 948, 958-59 (9th Cir. 2009). They recognize class representatives' efforts and financial or

26   reputational risk they undertake, and their willingness to act as private attorneys general. *Id.*; *see*

27   *also Grey Fox v. Plains All-Am. Pipeline*, 2024 WL 4267431, at *6 (C.D. Cal. Sept. 17, 2024)

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - 11
Case No. 2:19-cv-00175-MJP

1  ("Courts have discretion to approve service awards based on the amount of time and effort spent,

2  the duration of the litigation, and the personal benefit (or lack thereof) as a result of the

3  litigation." (citation omitted)).

4      Samson contributed significantly to the success of this litigation by serving as the sole

5  representative of the class. Samson responded to nine sets of discovery, including intrusive

6  requests for personal information about criminal convictions, "current or prospective landlord-

7  tenant relationships", and lease applications. Samson Decl. ¶5-6. Samson took time off work to

8  sit for deposition and to attend mediation in person. *Id.* ¶6; Murray Fee Decl. ¶42. Samson

9  regularly communicated with counsel about case status and strategy. A $20,000 service award,

10 which amounts to less than 1% of the common fund he helped create, is appropriate. *See Grey*

11 *Fox*, 2024 WL 4267431, at *6-7 (approving $20,000 service awards to representatives who sat

12 for depositions, responded to discovery, and supplied information to counsel); *In re Nat'l*

13 *Collegiate Athletic Ass'n*, 2017 WL 6040065, at *11 (N.D. Cal. Dec. 6, 2017) (approving

14 $20,000 service awards and collecting cases approving similar awards); *Garner v. State Farm*

15 *Mut. Auto. Ins.*, 2010 WL 1687832, at *17 n. 8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in

16 the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where, as

17 here, the class representative has demonstrated a strong commitment to the class.").

18              **IV.    CONCLUSION**

19      Samson and Class Counsel respectfully request the Court grant their motion.

20      RESPECTFULLY SUBMITTED AND DATED this 14th day of March, 2025.

21                      TERRELL MARSHALL LAW GROUP PLLC

22                      I certify that this memorandum contains 4,200
                        words, in compliance with the Local Civil Rules.
23
                        By: /s/ Jennifer Rust Murray #36983
24                          Beth E. Terrell, WSBA #26759
                            Email: bterrell@terrellmarshall.com
25                          Jennifer Rust Murray, WSBA #36983
                            Email: jmurray@terrellmarshall.com
26                          Adrienne D. McEntee, WSBA #34061
                            Email: amcentee@terrellmarshall.com
27

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS - 12
Case No. 2:19-cv-00175-MJP

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

3

Blythe H. Chandler, WSBA #43387
Email: bchandler@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603

4

5

6

7

8

9

James A. Francis, *Admitted Pro Hac Vice*
Email: jfrancis@consumerlawfirm.com
John Soumilas, *Admitted Pro Hac Vice*
Email: jsoumilas@consumerlawfirm.com
Jordan M. Sartell, *Admitted Pro Hac Vice*
Email: jsartell@consumerlawfirm.com
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, 25th Floor
Philadelphia, Pennsylvania 19103
Telephone: (215) 735-8600

10

11

12

13

14

15

Jonathan Shub, *Admitted Pro Hac Vice*
Email: jshub@shublawyers.com
Samantha E. Holbrook, *Admitted Pro Hac Vice*
Email: sholbrook@shublawyers.com
SHUB JOHNS & HOLBROOK LLP
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, Pennsylvania 19428
Telephone: (610) 477-8380

16

*Class Counsel*

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S MOTION FOR ATTORNEYS'
FEES AND COSTS - 13
Case No. 2:19-cv-00175-MJP